WHITE v. WANSEY et al.

(Circuit Court of Appeals, Sixth Circuit. June 3, 1902.)

No. 1,015.

**1. WITNESSES—COMPETENCY—RULE OF FEDERAL COURTS.**

Congress having legislated on the subject of the competency of witnesses in the courts of the United States by providing in Rev. St. § 858, that "no witness shall be excluded * * * in any civil action because he is a party to or interested in the issue tried," with a stated exception in suits by or against executors, etc., such legislation is exclusive, and the exception cannot be enlarged by a state statute.

**2. APPEAL—REVIEW—ADMISSION OF EVIDENCE.**

On appeal in suits in equity in the federal courts, unless an exception appears in the record, based on an objection to the admission of evidence, such evidence is considered as having been admitted by consent, and it cannot be excluded from consideration by the appellate court.

**3. SPECIFIC PERFORMANCE—PROOF OF CONTRACT—SUFFICIENCY OF EVIDENCE.**

Under the rule that specific performance will not be decreed without clear and satisfactory proof that the contract was made, a contract for the sale of real estate is not sufficiently established where there is a conflict of evidence as to whether it was signed or not, and it was understood by both parties that it should be acknowledged so as to entitle it to record, but it was not so acknowledged, it being shown without dispute that the vendor refused to acknowledge it, and took it from the custody of the notary with whom it had been left, saying he had concluded not to make the agreement.

**4. SAME—ESTOPPEL.**

After a contract for the sale of real estate had been signed by the vendor, as claimed by the purchaser, the vendor refused to acknowledge it or to complete the sale. A few days later a building on the premises was destroyed by fire, and thereafter the vendor expressed his regret to the agent of the purchaser that he had not completed the sale, but neither the agent nor his principal made any claim that the contract was binding until several months after, during which time the vendor entered into a partnership for the use of the property, purchased materials for building, and afterwards died. *Held*, that the purchaser was estopped by his acquiescence, and his delay until conditions had so changed, from then insisting upon a specific enforcement of the contract.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

The appellant filed a bill in the court below for the specific performance of a contract claimed to have been executed by John A. Wansey and Melissa D. Wansey, his wife, on September 14, 1899, by which they agreed to convey to Sidney C. McLouth certain land in Marine City, Mich., upon which was situated a salt block, for the sum of $25,000, of which $500 was to be paid on the execution of the contract, and the balance on the execution of the deed provided for in the contract. The complainant was the real party in interest, and McLouth, who was the son-in-law of John A. Wansey, had no interest in the transaction, except as complainant's agent. It was claimed by the complainant that Wansey and his wife signed the contract and delivered it to McLouth, who gave Wansey a check for $500, representing the first payment, on September 14, 1899; that McLouth then left the contract with the cashier of the Marine City Savings Bank to have it acknowledged in order to entitle it to record; that Wansey, several days later, called at the bank, and asked for the contract, which was handed to him, and that he then handed to the cashier of the bank the check for $500, which he had received

¶ 1. See Courts, vol. 13, Cent. Dig. § 925.

from McLouth, and took the contract away with him, saying that he had concluded not to make the agreement. The check was afterwards returned to McLouth. On September 29th the salt block, upon which there was only $3,000 of insurance, was destroyed by fire. Five days after the fire the partnership existing between John A. Wansey and one James A. Davidson, who had been partners in the salt manufacturing business conducted on the premises covered by the contract for more than ten years, was dissolved by mutual consent, and they entered into a new partnership agreement to continue for five years. They immediately commenced to rebuild the plant, which they had under way, when John A. Wansey died on December 21, 1899. McLouth was in New York when he learned of the fire, and when he returned to Marine City he became aware of the new partnership and the reconstruction. On January 29, 1900, McLouth made a formal assignment of the contract to the complainant on a copy which had been retained by him, but which had not been signed by John A. Wansey or his wife. Chester D. Wansey, the son of John A. Wansey, was appointed administrator of his father's estate, and a demand was made for the performance of the contract, which was refused on the ground that it had never been signed or delivered, and this bill was thereupon filed on the 23d of March, 1900. The widow of John A. Wansey and his children, except Mary McLouth, who is the wife of Sidney C. McLouth, the agent of the complainant, united in an answer denying all of the material allegations of the bill, and alleged the laches of the complainant, claiming that it would now be inequitable to require a compliance with the contract, even if it had been made. After proofs were taken, the bill was dismissed in the court below, and the complainant appealed.

Thomas A. E. Weadock, for appellant.

Avery Bros. (Harrison Geer, of counsel), for appellees.

Before SEVERENS, Circuit Judge, and WANTY and COCHRAN, District Judges.

WANTY, District Judge, after making the foregoing statement, delivered the opinion of the court.

1. The complainant depended very largely on the testimony of the witness McLouth, who testified to the execution and delivery of the contract, and was flatly contradicted by Melissa D. Wansey in every material particular. The defendants objected before the examiner to the testimony of McLouth, because they claimed it was excluded by section 10,212 of the Compiled Laws of Michigan of 1897, the applicable portion of which is:

"That when a suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees or personal representatives of a deceased person, the opposite party, if examined as a witness on his own behalf, shall not be admitted to testify at all to matters which, if true, must have been equally within the knowledge of such deceased person: * * * provided, that whenever the words 'the opposite party' occur in this section it shall be deemed to include the assignors or assignees of the claim or any part thereof in controversy."

Under this statute it was not competent for the witness McLouth to testify to the matters equally within the knowledge of John A. Wansey; but it is provided by congress that:

"In the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action because he is a party to or interested in the issue tried; provided, that in actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other, as to any transaction with, or statement by, the testator, intestate, or

ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court. In all other respects the laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty." Rev. St. § 858.

This legislation by congress is on the same subject as the statute quoted from the Michigan Compiled Laws, and when the United States legislates on any subject that legislation, if constitutional, is exclusive. It is urged that the final clause of section 858, above quoted, makes the Michigan statute the rule of evidence, because, in going farther than the federal statute on the same subject, it provides for a matter that is not covered by that statute. To this we cannot assent, as such a determination might allow the federal statute to be practically nullified. When congress declares the rules of evidence which shall prevail in the courts of the United States, such rules cannot be changed, modified, or enlarged by any state legislation on the same subject. Congress has only declared the parties incompetent to testify as to transactions with or statements by the testator, intestate, or ward, unless called to testify by the opposite party or by the court; and, having spoken on this subject, the state law in the federal courts must be deemed to be silent. Insurance Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251; Travis v. Insurance Co., 43 C. C. A. 653, 104 Fed. 486. The testimony of McLouth, under this statute, was admissible, and is properly in the record to be considered by this court.

2. But if the contention of the defendant had been correct, and the Michigan statute had applied to this testimony, it could not be excluded in this court, because there is nothing in the record to show that the court below passed on this question. It was taken for granted at the hearing that in coming to the conclusion that the bill should be dismissed the court excluded the testimony of McLouth; but the record does not show that to be the fact, nor that this question was ever ruled upon by the circuit court, nor that any exception covering such a ruling was made. It has been assumed by counsel that the practice in the Michigan chancery courts, in which no exception need be taken in the nisi prius court in order to have the question of admissibility of evidence there presented passed upon by the appellate court, prevails in this court. But the procedure of the English chancery courts has always prevailed in the federal courts in this country, subject only to the changes made by the statutes of congress and the rules of the supreme court. The rules which prevail in the supreme court of the United States, as modified by the rules of the circuit court of appeals, govern the practice here; and it has been held by this court that under this procedure and these rules, where the record does not disclose that a question was presented to the court and ruled upon, that question cannot be reviewed. If there is no exception in the record based on an objection taken to the admission of the evidence, the testimony must be considered as having been admitted by consent. Kalamazoo R. Supply Co. v. Duff Mfg. Co. (C. C. A.) 113 Fed. 264.

3. Considering all of the testimony in the case, including that of the witness McLouth, we are of the opinion that the probabilities are that

the contract was never delivered, and was never understood by either party thereto as binding. There is a conflict in the evidence as to whether the contract was signed, but it was understood by both parties that it should be acknowledged before a notary public, so that it might be entitled to record under the Michigan statutes. With this understanding one copy was left with John A. Wansey and the other was taken by McLouth to Carman, a notary public, and cashier of the bank, who, when Wansey called for it, delivered it to him. If it had been signed, and the only duty of Carman was to take the acknowledgment, it was not necessary for him to deliver it to Wansey, who could have no right to or use for it. But, if the transaction was not closed, Wansey had a right to the contract, and Carman seems to have acted on that supposition. After Carman handed the contract to Wansey, he says that Wansey took the paper, and he heard the scratching of a pen, but does not know whether he wrote or erased something; that Wansey handed him the check for $500, which McLouth had given him, and said that he had concluded "not to do that, not to make the agreement," and went out. On the following Monday McLouth was told by Carman what had happened, and he had a talk with Wansey in regard to it, who said that he did not want the contract floating around, but that after the 1st of January—before which time he did not wish Davidson to know anything about it—he would settle it up. Two weeks after that the fire occurred, and McLouth, who was in New York, informed the complainant of it the next day. He returned home about the 15th of October, and talked to Wansey about the fire, in which conversation Wansey said that he did not think White would take the plant now; and McLouth not only failed to inform him that he would, but testified that he did not then know that he would. It is clear that, if Wansey at that time had insisted on McLouth taking the deed and paying the money, he would have refused to carry out the agreement. Wansey told McLouth that he was sorry he had not closed the transaction when he had a chance to get $25,000 in cash and make the deal, and McLouth did not tell him that he considered that the deal had already been made, and that White was bound to carry it out. Wansey made his new arrangement with Davidson, and commenced rebuilding the plant; and not until after his death did either McLouth or the complainant intimate that he considered the contract which had been entered into binding, although it had not been acknowledged as agreed. It seems too plain for controversy that McLouth and Wansey both considered the acknowledgment a necessary step before the contract should become binding, and, when Wansey declined to acknowledge it, and returned the check, McLouth and the complainant, as well as Wansey, acted until after Wansey's death on the basis that no contract had been made. Although McLouth saw Wansey every day, and knew that Wansey was regretting the fact that he had not closed the transaction with White, no intimation was made to him that the transaction was closed, and that he could collect the purchase price notwithstanding the disastrous fire. Certainly Wansey acted on the supposition that the acknowledgment of the contract was necessary before it could become binding upon him, and there is no evidence in the case which indicates

that McLouth was not of the same opinion. If the question of the execution of this contract is doubtful, specific performance ought not to be enforced.

In Colson v. Thompson, 2 Wheat. 341, 4 L. Ed. 253, the supreme court says:

"The contract which is sought to be specifically executed ought not only to be proved, but the terms of it should be so precise as that neither party could reasonably misunderstand them. If the contract be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy."

In Hennessey v. Woolworth, 128 U. S. 442, 9 Sup. Ct. 111, 32 L. Ed. 500, where the specific performance of a contract was sought to be enforced, Justice Harlan, announcing the opinion of the court, says:

"Specific performance is not of absolute right. It rests entirely in judicial discretion, exercised, it is true, according to the settled principles of equity, and not arbitrarily or capriciously, yet always with reference to the facts of the particular case. The question in cases of specific performance, Lord Eldon said, is not what the court must do, but what, under the circumstances, it may do, in the exercise of its discretion to grant or withhold relief of that character. It should never be granted unless the terms of the agreement sought to be enforced are clearly proven, or where it is left in doubt whether the party against whom relief is asked in fact made such an agreement."

The court in the latter case thought it doubtful, under the conflicting evidence, whether a contract had been signed, and hence refused specific performance.

In Dalzell v. Manufacturing Co., 149 U. S. 315, 13 Sup. Ct. 886, 37 L. Ed. 749, the supreme court cited with approval, among other cases, Hennessey v. Woolworth, supra, and held that specific performance will not be decreed in equity without clear and satisfactory proof of the contract set forth in the bill. In De Sollar v. Hanscome, 158 U. S 222, 15 Sup. Ct. 818, 39 L. Ed. 956, the court says:

"Where the existence of a contract is a matter of doubt, equity will not, as a rule, decree specific performance; especially in a case like this, where, as appears, the property was rapidly rising in value."

4. We think the evidence in this case did not warrant the court in finding that the contract was finally executed and delivered; but, if it had, and Wansey had endeavored to recede from it in the manner indicated by the testimony, the complainant, knowing all the facts, could not, in equity, have apparently acquiesced, and, by his actions, allowed Wansey to understand that he would not enforce the contract, and thus induce him to form a new partnership with Davidson, buy material for a new plant, wait until after Wansey died, and then insist on the performance of the contract. The condition of the property and the position of the parties have so changed that a decree for specific performance would be inequitable, and therefore ought not to be made.

The decree of the circuit court dismissing the bill is affirmed.