CONSOLIDATED RUBBER TIRE CO. et al. v. FIRESTONE TIRE & RUBBER CO.

(Circuit Court of Appeals, Second Circuit. January 30, 1907.)

No. 223.

1. PATENTS—INVENTION—SUCCESS OF DEVICE.
Where a patented device has won a position of unchallenged supremacy in the commercial world, a court should endeavor to sustain the patent rather than defeat it.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 229–231.]

2. SAME—RUBBER TIRED WHEEL.
The Grant patent, No. 554,675, for a rubber tired wheel was not anticipated and discloses invention. While the elements entering into the combination are old, such combination operates to produce a new result, or an old result in a manner which is a vast improvement over anything in the prior art. The tipping or rocking of the tire when subjected to lateral pressure is a function inherent in the combination, and the specification is so clear and explicit that no intelligent mechanic could follow it without securing such result. Also held infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.
For opinion below, see 147 Fed. 739.

The decree of the Circuit Court for the Southern District of New York sustained letters patent No. 554,675, issued February 18, 1896, to Arthur W. Grant, for an improvement in rubber-tired wheels. The patent has been the subject of extensive and protracted litigation. It has been sustained by Judge Thomas, Rubber Tire Wheel Co. v. Columbia Pneumatic Wagon Wheel Co. (C. C.) 91 Fed. 978, by Judge Wing (unreported)[1], and by Judge Newman, Consolidated Rubber Tire Co. v. Finley Rubber Tire Co. (C. C.) 116 Fed. 629. The patent has been held invalid by the Circuit Court of Appeals for the Sixth Circuit, Goodyear Tire & Rubber Co. v. Rubber Tire Wheel Co., 116 Fed. 363, 53 C. C. A. 583; Rubber Tire Wheel Co. v. Victor Rubber Tire Co., 123 Fed. 85, 59 C. C. A. 215, and by Judge Anderson, following the decision of the Circuit Court of Appeals. A petition for a writ of certiorari to review the decision of the Circuit Court of Appeals for the Sixth Circuit was denied by the Supreme Court, Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co., 187 U. S. 641, 23 Sup.

[1] Reversed in 116 Fed. 363, 53 C. C. A. 583.

Ct. 842, 47 L. Ed. 345. The patent was indirectly involved in the decision of Rubber Tire Wheel Co. v. Milwaukee Rubber Works Co. (C. C.) 142 Fed. 531. The decision of Judge Platt in the Circuit Court is reported in Consolidated Rubber Tire Co. v. Firestone Tire & Rubber Co. (C. C.) 147 Fed. 739.

Chas. C. Linthicum, Charles K. Offield, and Phillip B. Adams, for appellant.

Border Bowman, Thos. W. Bakewell, Charles W. Stapleton, and Paul A. Staley, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The literature of the Grant patent, in so far as it relates to the situation before the commencement of the present action, will be found in the prior adjudications. The arguments for and against the patent will be found admirably stated by Judge Thomas in the Columbia Case and by Judge Lurton in the Goodyear Case, respectively. To this discussion little can be added on either side. We shall endeavor, therefore, to confine our attention mainly to the new facts and features which have been added to or developed from the records in the earlier cases.

Grant's claims cover combinations composed of elements which, when considered separately, were all old, but which were combined by him to form a structure, which, for the first time, placed in the hands of vehicle owners a perfect rubber tire. From the crudities, oddities, total failures and partial successes which had preceded him he constructed a tire which became popular almost from its inception. This was not the result of chance or the haphazard selection of parts; his success could only have been achieved by a careful study of the scientific and mechanical problems necessary to overcome the defects which rendered the then existing tires ineffective and useless. The problems demanded the exercise of faculties far above those possessed by the skilled mechanic. Few patents have received such immediate and well-nigh unanimous recognition. For years carriage manufacturers had been making strenuous efforts in this country and in Europe to secure a practical rubber tire. The moment Grant's structure appeared it was adopted by all the large manufacturers and to-day it is no exaggeration to say that no successful rubber tire can be made without embodying the distinguishing features of the Grant patent. Persistent efforts have been made to evade it but without success. The tire described and claimed in the Grant patent is the standard rubber tire of to-day. This popularity may be accounted for in part by the financial ability of the owners of the patent to promote sales, but it was a most inconspicuous part. The hard-headed men of trade do not place themselves in a position where they must accept the alternative of an infringement suit or the payment of license fees for the use of an article, when an equally good article may be had for nothing. It should be and is the desire of the court in approaching the consideration of a patent for a structure which has thus won a position of unchallenged supremacy in the commercial world, to endeavor to sustain rather than defeat the claims. The

combination of the patent operates, we think, to produce a new result or an old result in a manner which is a vast improvement over anything in the prior art. The Grant tire has the capacity, which no other possesses, of readjusting itself, after yielding to severe lateral strain, without tearing, or abrasion of the rubber or injury to any of the parts.

The Circuit Court of Appeals found that the new mode of operation which produces this result is not mentioned in the specification or inherent in the combination but depends for its discovery upon the ingenuity of experts. Recognizing the rule that one who has invented a structure which cannot be used without including the function which produces the new result, is entitled to all the uses of his invention whether known to him or not, the court says:

"If this tipping capacity had been pointed out and even this indefinite direction given by the patentee as to the mode of securing that operation, the patent might possibly be saved."

It now appears that the feature which secures patentability is inherent in the patent, and the specification is so clear and explicit that no intelligent mechanic can follow Grant's directions without securing the tipping action which inheres in no other tire. This feature is neither an accident nor "an obscure property"; it exists in every wheel on which is mounted a tire which follows the teaching of the patent. In view of this new aspect of the case we have no reason to doubt that on the present record the Court of Appeals of the Sixth Circuit would reach a result favorable to the patent.

The complainants' expert says:

"It is absolutely impossible to adjust the tension of the wires, so that this yielding capacity will not be exhibited in the tire."

We are convinced, in view of the new testimony, that he is correct. The specification is addressed to those skilled in the art; it is enough that they understand it. Had the patentee attempted to point out the minute details of the elements making up his combination—such as the quality and degree of elasticity of the rubber, the material, size, strength and tensility of the wires and the exact amount of force needed to draw the wires together, he would have found himself surrounded by difficulties even more serious than those which now confront him. He chose to leave these details to the intelligent operator with the assurance that such a one would possess sufficient knowledge to draw the wires tight enough to hold the rubber firmly in the channel, but not tight enough to break them. Nothing more was required, for a tire so secured would necessarily have the capacity of reseating itself when subjected to unusual lateral strain and would infringe the claims. The entire prior art was before the skilled workman to the same extent as if written in the Grant patent, and, with this knowledge, it is hardly possible that he could set the tire so that it would fail to perform the functions referred to, unless he deliberately purposed to make a failure. On the one hand, he would know that he must not draw the wires tight enough to break them, and, on the other, that he must draw them sufficiently to hold the tire

snugly in the channel. Ordinary common sense would teach him to do this, and if he neglected to exercise it he would find that in one case the wires would break and in the other that the tire would rock, and, if subjected to any unusual jolt, would roll out of the channel. That the capacity for readjusting itself when subjected to lateral strain is inherent in the Grant tire seems perfectly plain, and was demonstrated at the argument even by hand pressure applied to the tire at a point where the rubber had been cut down so as to expose the wires. Indeed, the defendant's expert says:

"There is no doubt that when lateral pressure is applied to one side of the exposed portion of the tire, there is a tendency to roll the tire out of the channel. The element which materially resists this tendency is that retaining-wire on the side to which the pressure is applied. If this wire is sufficient to resist the strain, the tire cannot roll out of the channel; and the function of the other retaining-wire, at the opposite side of the tire, is simply to hold that part of the tire in its place, in order that it may be prepared, in its turn, to receive lateral thrust from the opposite side."

Without discussing the subject further we are satisfied that the description of the patent is sufficiently full, clear, concise and exact to enable a person skilled in the art to make the Grant tire. We are also convinced that the new and useful tipping and reseating feature is inherent in the structure and that it was not necessary to point it out specifically, for the reason that no intelligent mechanic in the rubber tire art could follow the teachings of the patent without producing a tire possessing this function.

The patent to Latta, No. 341,811, granted May 11, 1886, is now advanced as the nearest approach to anticipation found in the old art. It is a somewhat significant fact that the Latta patent is not mentioned in the opinion of the court in either the Goodyear or Columbia case, but, irrespective of any presumption which may be drawn from its belated prominence, we are of the opinion that its disclosures are in no way fatal to the claims in controversy. Our reasons may be epitomized as follows:

First.—The patent is for an improvement in velocipedes, or bicycles, where the wheels, guided by the rider, follow each other in a narrow track. The danger from lateral strain in such a vehicle is comparatively remote.

Second.—The description says that "It is obvious that the tire may be secured in its seat by cement, in the usual manner, if desired." If this were done the distinguishing feature of the Grant tire would, in any view, be eliminated.

Third.—The wires are molded into the tire, thus preventing all independent action between the wires and the rubber. If subjected to lateral strain the rubber will not turn on the wires, and if subjected to longitudinal strain it will not "creep" along them. The Latta tire in this particular is little more than a rubber tire reinforced and strengthened by wires.

Fourth.—The wires are wavy or serpentine in form, "which prevents them from drawing in the tire if broken therein." Every precaution seems to have been taken to prevent any independent move-

ment of the wires. It is also obvious that with the use of these sinuous, wavy wires there must be many points where the wires are not within the inner or unexposed portion of the tire, namely, below the line between the two angles of the tire, as pointed out by Grant. When subjected to lateral strain at these points it would seem that the tire can no longer exert the necessary leverage to lift the side of the tire from the channel. In other words, the strain will operate to crowd the tire against the opposite flange with no tipping action to relieve the pressure.

Fifth.—Latta's tire is circular in cross-section, there being no angles as shown at $c^4$ of the Grant drawings. The widest part of the Latta tire is above the outer peripheries of the flanges and receives no protection therefrom.

Sixth.—The bottom of Latta's tire is concaved to fit a corresponding convexity in the bottom of the channel, and it is argued with some plausibility that such construction would, in case of lateral strain, severe enough to cause either side to rise, result in jamming the rubber so that it could not readily reseat itself.

Other reasons might be given, but we think enough has been said to show that in our judgment Latta had no conception of the improvements found in the Grant structure.

Upon the question of infringement we deem it unnecessary to add anything to the opinion of the Circuit Court. The complainants hold the legal and equitable title to the patent, no outstanding interest in any other party is suggested, and we fail to see how such an interest can exist.

The decree is affirmed.