WEED CHAIN TIRE GRIP CO. et al. v. EXCELSIOR SUPPLY CO. et al.

(Circuit Court, N. D. Illinois, E. D.   May 20, 1910.)

1. PATENTS (§ 40*)—VALIDITY—FUNCTIONAL CLAIMS.
   Claims of a patent for means for, or mechanism adapted to, a certain result, and, like functional claims, are not objectionable if limited to the invention shown by the specification and drawings.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 47; Dec. Dig. § 40.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—CHAIN TIRE GRIP.
   The Parsons patent, No. 723,299, for a chain tire grip, was not anticipated, and is not for a function, but discloses an operative and useful device, basic to a large extent which required invention; also held infringed.

In Equity. Suit by the Weed Chain Tire Grip Company, Harry D. Weed, and the Parsons Non-Skid Company, Limited, against the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Excelsior Supply Company and the Motor Appliances Company. Decree for complainants.

Duncan & Duncan and Victor Elting, for complainants.

Sheridan, Wilkinson & Scott, for defendants.

SANBORN, District Judge.   Infringement suit based on the Parsons patent, No. 723,299, issued March 24, 1903, for a chain tire grip. Complainants are, respectively, assignees or interested in the patent. One of defendants sells a similar device, and the other manufactures it.

The patentee's description of his invention, and two of his claims, are as follows:

"It has been proposed to guard against slipping and puncturing by incorporating an antislipping or antipuncturing device in the tire itself, which has the effect of slowing it considerably or causing disintegration and having other objectionable features.   According to my invention I overcome these objections by providing a separate construction, giving, in effect, a nonslipping medium between the surfaces in contact, and merely suspending on or engaging with the wheel, but not fixed thereto, and it is therefore free to travel around the wheel by the action of rolling contact.

"The device constituting my invention consists of a network of rings or strips of metal or other suitable material or a series of small chains or bands fitting loosely over the periphery of the wheel or passing from side to side across the tire—that is, not incorporated with it—and prevented from coming off by two rings, hoops, or their equivalent, preferably of wire or other suitable material, such rings or the like, or one of them, being provided, if desired, with means of attachment and detachment, such as a right and left hand screw-thread and nut, and the said rings or the like being smaller in diameter than the periphery of the wheel they cannot come off accidentally.

"Antislipping or protecting means for the peripheries of wheels, pulleys or the like, comprising attaching elements at opposite sides of the wheel, and an antislipping or protective medium secured to the attaching elements and extending across and around the periphery of the wheel, said parts being disconnected from though retained on the wheel whereby the antislipping or protective medium is free to move or shift its position around the periphery thereof.

"Antislipping or protective means for the peripheries of wheels, pulleys or the like, comprising two rings or annuli at opposite sides of the wheel, and an antislipping or protective medium consisting of a chain or chains secured to the rings and extending across and around the periphery of the wheel, said parts being disconnected from but retained on the wheel whereby the antislipping or protective medium is free to move or shift its position around the periphery thereof."

Advantages claimed for the device are thus stated by counsel:

"The construction of the device by which it is loose on the wheel and free to travel circumferentially around it when in action gives several important results referred to in the patent.   In the first place, the 'freedom to travel' adds very materially to the antislipping qualities of the device, in effect continuously laying down on the ground in front of the tire 'a nonslipping medium,' consisting of a series of loose cross chains, under conditions affording a maximum of traction result.   In the next place, it prevents the disintegration of the rubber tire, which, as suggested in the patent, in all other proposed constructions had proved a fatal obstacle to the use of a metal traction device on a rubber tire.   Again, it prevents the inevitable and objectionable 'slowing' of the tire in action, which occurs where metal traction plates or similar parts are incorporated in the tire."

It is also essential in a practical device that it must be securely maintained on the tire against coming off, particularly at times of greatest strain when the machine is skidding. While the device is simple, a complicated problem is involved, which had to be comprehended by the inventor, and must be understood in order that the full scope of the invention can be comprehended. The elements of the problem are that by all prior inventors it was supposed to be necessary to fasten the device rigidly upon the tire, or incorporate it with it, instead of being left loose or flexible. Such devices proved failures for a number of reasons. They wore out the tire by abrasion at the point of contact, "slowed" it by destroying resiliency, wore themselves out by friction, and were difficult to keep on. These objections were to a great degree overcome by the patent grip. It lessens wear by stopping the slipping, is easy to put on and take off, distributes and lessens wear of the tire by its circumferential travel, and has proved a great commercial success, superseding all other forms.

This changing of the universal idea that an antiskid device must be securely fastened to the tire required invention, and the device described by the patentee, with such improved construction as experience and mechanical skill suggested, is fully capable of carrying out the inventive idea. There is an operative device, utility, a greatly improved result, commercial success, and the supplanting of all other like devices.

It is true, and clearly disclosed by the evidence, that circumferential creeping, or what Parsons calls traveling around the wheel by the action of rolling contact, was not new with him as a practical result, but he was the first to claim and fully utilize it, and understand its significance in the art. It is the inevitable law of the rolling wheel. It is even difficult to keep the tire itself from creeping forward on the rim. This tendency has been well understood from the time of the bicycle. And, when an antislipping device is put on the tire, however firmly, it will travel around it. All other inventors, however, conceived the notion that this circumferential creeping was a detriment, and must be prevented in order to get traction and prevent slipping. Parsons was the first to understand that this motion was beneficial, that the best traction would be given by utilizing it, as well as the best form of antiskidding. He therefore reversed the prevailing idea that this motion must be prevented as much as possible, and specified a loose grip, "merely suspended on or engaging with the wheel, but not fixed thereto—free to travel around it." He also contrived a novel means of carrying his idea into practical application; that is, by a loose grip, held upon the tire by side members of sufficiently less diameter than the tire to securely retain the device in place. Neither of these things had been done before. This is not an attempt to patent a function, result, idea, or abstraction, but a new conception and new embodiment of that conception, producing an improved result, useful in itself, and commercially successful. It is entitled to liberal treatment, both as to anticipation and infringement.

To the objection that the claims are functional, it may be said that claims for means for, or mechanism adapted to a certain result, and,

like functional claims, are not objectionable if limited to the invention shown by the specification and drawings. So narrowed, they are valid. Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586; Paper Bag Case, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122. Moreover, some of the claims, like the last one quoted, read directly on the illustrated construction.

Another objection, that the disclosure is not complete, may be answered by saying that no one has found any difficulty in building the devices, nor is it thought that even a workman unskilled in the art, after reading the patent, could not properly construct it. Even functions not specified, where means to secure them are claimed, but not fully explained, have not been so construed as to avoid the patent. In the rubber tire wheel cases, the important side-tipping function, all there was to distinguish prior art, was not clearly claimed, nor was the proper tension on the securing wires, by which such function was secured, even suggested, but the patent was sustained everywhere except in the Sixth Circuit. Consolidated Tire Co. v. Firestone Tire Co., 151 Fed. 237, 80 C. C. A. 589; Rubber Tire Wheel Co. v. Milwaukee, etc., Co., 154 Fed. 358, 83 C. C. A. 336. This was for the reason that the side-tipping function of the tire was universally found on the wheels, built by workmen everywhere.

Anticipation is asserted through a number of patent antiskidding devices, but they were all designed on the rigidly attachable notion, with that relation of the parts to each other which distinguishes the Parsons device, entirely wanting. Those most relied on are the Giffard British patent and the Clark-Wertheim-Rosenberg patents, all of which were abandoned by the patentees, no doubt partly because too early in the art, but also partly for the reason that they were all of the rigidly attached kind. Giffard says that his invention consists in combining metal with the outer part of elastic tired wheels to prevent slipping and grip the road. The first eight of his figures show devices either going through the tire or sunk into it. The tenth and eleventh figures show a metal chain ladder, "secured to the periphery of an elastic tire." It is perfectly manifest that he never thought of a loose grip, free to travel on a tire. It is easy enough at this day, after Parsons has shown the way, to convert his metal ladder into a perfect Parsons grip. This is a common method of showing anticipation, but is not often a successful one. The Giffard disclosure is also too vague and incomplete to constitute an anticipation.

The Clark-Wertheim-Rosenberg patents represent the same invention patented in different countries. In the specification of each and all of them it is said that the device (which was made for bicycle tires) is so embedded in the rubber of the tire casing that it cannot change its position as a whole. By making some changes disclosed by the Parsons invention, it is now possible to obtain fair results from its use, although it rapidly wears out. The Clark invention was for a different combination and though not entirely inoperative, possesses little utility.

What prevents these prior patents being anticipations is chiefly this: That the relation of parts which makes Parsons novel and useful is absent. If the Giffard chain ladder be used, and the inevitable ten-

dency toward travel around the tire results from such use, the device falls off. Or, if the side members be put far enough down to prevent this at first, then as soon as one of the cross-members breaks, off goes the whole device again. Giffard came nowhere near discovering the proper relation of parts. The Parsons invention is a new mechanical combination, with appropriate location and length (shortness) of the side members, and appropriate length of cross-members, which, by their combined operation, each modifying the other, looseness, circumferential travel, and secureness, make a practical and successful whole.

I think the patent fully operative, useful, not for a function, not anticipated, basic to a large extent, fully valid and infringed.

Defendants' zig-zag grip is almost identical. The Victor grip, formerly made or sold by defendants, was stated by defendants' expert to be an infringement if the patent was valid. He did not explain its function nor mode of operation, nor was any model of the device offered in evidence, although cuts representing this form of grip appear in the advertisements in evidence. While the argument did not particularly mention the Victor grip, the record clearly shows it to be an infringement. On further consideration, I am thoroughly convinced that it infringes complainants' patent, but the question has not had that full consideration which should require any other court to decline to consider that question for itself.

Complainants are entitled to the relief asked.