RUBBER TIRE WHEEL CO. et al. v. GOODYEAR TIRE & RUBBER CO.

(Circuit Court of Appeals, Sixth Circuit. December 15, 1910.)

No. 2,037.

PATENTS (§ 327*)—DECREE ADJUDGING PATENT INVALID—RIGHTS OF DEFENDANT.

A decree in an infringement suit adjudging the patent void for lack of patentable invention leaves the defendant with the same rights as though the patent had never been issued, including the right to make and sell the whole or any part of the patented device without interference with its business by the complainant by harassing its customers with suits or threats of suit for infringement, in which right it is entitled to protection by injunction.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 620–625; Dec. Dig. § 327.*

Operation and effect of decision in equitable suit for infringement, see note to Westinghouse Electric & Mfg. Co. v. Stanley Instrument Co., 68 C. C. A. 541.]

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

Suit in equity by the Goodyear Tire & Rubber Company against the Rubber Tire Wheel Company and the Consolidated Rubber Tire Company. From an interlocutory order granting a preliminary injunction, defendants appeal. Modified and affirmed.

See, also, 164 Fed. 869.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This cause is here upon appeal from an interlocutory order made in the court below enjoining appellants, pendente lite, from instituting or prosecuting certain suits against customers of appellee. The suit was begun by a bill in equity of the appellee. as complainant, against the appellants as defendants. It is averred in the bill that complainant is engaged in the business of manufacturing and selling solid rubber tires for vehicles; that in 1900 defendants sought by suit commenced in the Circuit Court of the United States for the Northern District of Ohio, to enjoin the present complainant from making and vending its tires on the ground that they embodied the elements of a certain patent issued to one Grant in 1896, No. 554.675, for rubber tired wheels, the letters patent having been acquired by the present defendants: that the suit resulted ultimately in a decision of this court holding the Grant patent to be null and void, and directing that the bill be dismissed: and that a petition for a writ of certiorari to this court was subsequently denied by the Supreme Court. It is further averred in the present bill that, notwithstanding such adjudged nullity of the Grant patent, the defendants are seeking to enforce it against customers of complainant, some of whom are specially named in the original bill and an amendment thereto, and against whom suits have been brought; that many of its customers are being intimidated by such suits and by threats made by defendants to commence suits against others, some withholding orders for complainant's rubber tires unless indemnified by it. An injunction is prayed against defendants from so diverting, and interfering with, complainant's business and trade in rubber tires.

In the opinion rendered in the court below, allowing the interlocutory order, this statement of facts appears:

"In July, 1908, the defendants in this case, who were the complainants in the original suit brought in the Northern district of Ohio, filed a bill in one of the federal courts sitting in New York to restrain and enjoin one Doherty from infringing the Grant patent. Doherty is a small dealer, of small means, and has been a customer of the complainant since December, 1907. The affidavit shows him to have stated that some persons unknown to him, desiring to equip a carriage wheel with a rubber tire, directed that the tire must be of the complainant's manufacture, and Doherty thereupon purchased such a tire. Thereafter Roberts, New York manager of the Consolidated Tire Company, before the fitting of a rubber to the wheel, directed him to buy the necessary wiring and steel channel of some one other than the complainant or any of its agents or branch houses. He thereupon purchased the wire of B. F. Goodrich, and the steel channel of the Rutherford Rubber Company. He says he was further directed by Roberts to mark the wheel to which he applied the tire so he could identify it, and to send his bill for services rendered to the company of which Roberts was the New York manager. Doherty did this and credit was given him on his account by such company. The evidence is undisputed that Doherty purchased his materials as above stated and fitted them to the carriage wheel. The statements attributed to him are not denied."

By the preliminary injunction the appellants are restrained, pendente lite, from prosecuting the suit against Doherty (mentioned in the statement quoted), and also from "instituting, maintaining or prosecuting any action in any court of the United States, based on alleged infringement of letters patent No. 554,675 * * * against any person, firm or corporation for dealing in, buying, selling or using any of complainant's solid rubber tires or any of the component parts thereof," and also "from interfering with the business of complainant by threatening to bring such suits against complainant's customers, whether the business conducted with those customers is the vending to them of the whole of complainant's tire or some one or more of the elements which enter into it."

Staley & Bowman, for appellants.

H. A. Toulmin, for appellee.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). The important question concerns appellants' suit against John Doherty, and the preliminary injunction granted in the present case against the further prosecution of that suit. One objection made is that the court below relied on affidavits containing hearsay statements. Doherty is one of appellee's customers whose names are not stated in the pleadings, but against whom, as a class, threats of suit are alleged to have been made by appellants. Doherty has admittedly been a customer of appellee in the purchases of rubber tires since 1907; and the facts that he purchased a solid rubber tire of appellee and placed it on a wheel and received his pay from one of the appellants as found by the court below are not open to the charge of hearsay and are not disputed. The hearsay statements are those tending to show that one of appellants caused orders for purchases of materials by Doherty and the work done by him to be given and executed in a particular way, with a view of instituting against him the suit before mentioned. Whether hearsay statements can be considered or not on interlocutory motion (Chase's Stephen's Dig. Ev. [2d Ed.] 311, note 4), or whether effective waiver could arise through failure, as here, to present any motion, objection, or denial in the court below concerning such statements (San Pedro, etc., Co. v. United States, 146 U. S. 120, 137, 13 Sup. Ct. 94, 36 L. Ed. 911; White v. Wansey [6th Circuit] 116 Fed. 345, 347, 53 C. C. A. 634), we need not decide; for, as before indicated, the facts which we regard as material were shown by direct evidence. Then in addition to the averments of a portion of the bill, which are in substance set out in the statement, it is stated among other things in the amended answer:

"* * * Defendants do know and aver the fact to be that in the trade a carriage manufacturer often handles and sells different makes of rubber tires, and that the practice in trade is to purchase rubber, namely, one element of a combination of the Grant patent, from rubber companies and apply this rubber themselves by means of special machinery, or have it applied for them by some blacksmith or machine company, to channel irons furnished by the customer of said carriage company or purchased direct from some steel or rubber company, or furnished direct from some steel or rubber company, and that a large part of the rubber tire business of the carriage manufacturer is often done by applying the rubber by means of two independent retaining wires to their own make of wheels and to wheels furnished them having different makes of channel irons, but all of that peculiar shaped rim which co-operates with the two independent retaining wires and the rubber to form the Grant patented combination. * * *"

The result is that the features of the Doherty case, which consist of his purchase of the solid rubber tire from appellee, the wire from Goodrich, and the steel channel from the Rutherford Rubber Co., and of then assembling these articles in violation of the terms of the Grant patent, present one of the typical cases described in appellants' amended answer, not to speak further of the bill; and learned counsel for appellants insist that:

"The pivotal question in this case is whether the court in construing the Grant patent can treat any one element as more material than some other element."

We thus reach a consideration of the restraint of the interlocutory order upon appellants' prosecution of the Doherty suit. The basis of

that suit is the Grant patent.  As pointed out in the statement, in a suit between the parties to the present action the Grant patent was adjudged invalid, the decision being that it was "void for want of patentable novelty."  Goodyear Rubber Co. v. Tire & Rubber W. Co. (6th Circuit) 116 Fed. 363, 365, 366, 377, 53 C. C. A. 583.  It was a combination patent, its first. claim consisting of three elements, viz., a metallic channel rim, a solid rubber tire, and independent retaining wires passing entirely through the rubber tires horizontally.  So far as the effect of the decree in that case is concerned, counsel for appellants in substance admit that if Doherty had purchased all of these elements—the rim, the tire, and the wires—from appellee, complete privity between appellee and its customer would have arisen, and so have justified the preliminary injunction as to him.  This, of course, includes the further concession on the part of counsel that one effect of the former judgment is that, where a court of equity as here has jurisdiction of appellants, it may enjoin them by decree in personam from doing any acts at places beyond the jurisdiction of the court, as well as within it, which would interfere with the right of appellee to makes sales of all, as distinguished from part, of the elements (the articles aforesaid) embraced in the patented combination.  The concessions so made, as under the authorities they were bound to be, render it unnecessary to do more with respect to the history of the Grant patent than allude to the fact that the patent was held to be valid in a case to which appellee was not a party.  Consolidated Rubber Tire Co. v. Firestone T. & R. Co. (2d Circuit) 151 Fed. 237, 80 C. C. A. 589. A number of cases in which the patent was involved are cited in Consolidated Rubber Tire Co. v. Diamond Rubber Co. (2d Circuit) 157. Fed. 677, 85 C. C. A. 349.

The point of departure from the concessions of counsel, as well as their insistence, is that the protection of the former judgment cannot be invoked respecting sales of one or less than the whole of the elements covered by the combination.  As it seems to us, counsel refuse to accord due effect to the main feature of the bill.  It is injury to appellee's business, through interference with its customers, that is made the subject of complaint.

In Goodyear Tire & Rubber Co. v. Rubber Tire W. Co. (C. C.) 164 Fed. 869, 871, 877, the present appellee sought by bill to enjoin defendants from interfering with one of complainant's customers who was doing business in Havana.  One of the allegations of the bill was that under the protection of the former decree complainant was making rubber tires to sell to all who would buy.  An interlocutory injunction was denied, but solely upon the ground that defendants had registered the Grant patent in the republic of Cuba, and so had obtained "a Cuban patent for the same invention."  In other words, the court could not protect the present appellee in virtue of the decree declaring the Grant patent void, without interfering with independent rights acquired by defendants through the Cuban grant respecting business carried on in Cuba.  It is true that the point now relied on concerning sales of only one element of the combination does not appear to have been presented But apparently it was as open to consideration there as it is here.  The

case was heard before Judge Lurton, sitting in the Circuit Court, and in the course of the opinion he said:

"This court, as a court of equity having jurisdiction over the persons of the defendants, may control them, by decree in personam, from doing any act within or without the jurisdiction, at home or abroad, by bringing suit or otherwise, which shall be an interference with the right of the complainant to prosecute its business without interference with the defendants by virtue of the Grant patent."

In Kessler v. Eldred, 206 U. S. 285, 27 Sup. Ct. 611, 51 L. Ed. 1065, the right of a holder of one patent, who had failed in a suit for infringement against the holder of another patent, to maintain an action against a customer of the latter for using one of the latter's patented devices, was passed upon; and one of the controlling features of the decision is that such a suit, if not enjoined, would, in violation of the previous judgment, interfere with the business of the successful party in the original infringement suit.

Counsel for appellants earnestly endeavor to distinguish that case, on the ground that the customer was there using the entire patented device. They place stress upon the following language of Mr. Justice Moody, who announced the opinion of the court (206 U. S. 288, 27 Sup. Ct. 612, 51 L. Ed. 1065):

"Whether the judgment between Kessler and Eldred is a bar to the suit of Eldred v. Breitwieser (the customer of Kessler and user of his device), either because Breitwieser was a privy to the original judgment, or because the articles themselves were by that judgment freed from the control of that patent, we deem it unnecessary to inquire. We need not stop to consider whether the judgment in the case of Eldred v. Kessler had any other effect than to fix unalterably the rights and duties of the immediate parties to it, for the reason that only the rights and duties of those parties are necessarily in question here. It may be that the judgment in Kessler v. Eldred will not afford Breitwieser, a customer of Kessler, a defense to Eldred's suit against him. Upon that question we express no opinion. Neither it nor the case in which it is raised are before us."

It would seem, also, that questions of the character there stated are not before this court, and for the same obvious reasons. But it is difficult to perceive why the absence of such questions renders the decision inapplicable to the present case; nor are we able to understand why the principles announced in that decision are not in point here. It is plain that Kessler did not gain any more freedom through the result of Eldred's infringement suit to manufacture and sell the Kessler device than the Goodyear Company acquired respecting the Grant device in its original suit with the present appellants. Can it be that such freedom as to the whole device does not include its parts as well separately as collectively? Why, as between the parties to the present suit, did not the former judgment operate to remove the ban of the Grant patent from each of its elements, and also to destroy all right to the combination of those elements? It was found in the opinion declaring the invalidity of the Grant patent that its parts, as also the result accomplished by the combination, were alike old in the art. 116 Fed. 369, 371, 53 C. C. A. 583.

It appears that the appellee in fact both before and at the date of the Grant patent conducted the business, and that it has ever since

then maintained the business, of manufacturing and selling rubber tires. Manifestly that business, irrespective of the wire and rim trade, must be impaired if the appellants are to be allowed to prosecute suits against appellee's customers for rubber tires. There is no pretense that such suits can be maintained, except through the Grant patent.

Returning to Kessler v. Eldred, it was said by Mr. Justice Moody (206 U. S. 288, 289, 27 Sup. Ct. 613, 51 L. Ed. 1065):

"But the question here is whether, by bringing a suit against one of Kessler's customers, Eldred has violated the right of Kessler. The effect which may reasonably be anticipated of harassing the purchasers of Kessler's manufactures by claims for damages on account of the use of them would be to diminish Kessler's opportunities for sale. No one wishes to buy anything, if with it he must buy a lawsuit. * * * Leaving entirely out of view any rights which Kessler's customers have or may have, it is Kessler's right that those customers should, in respect of the articles before the court in the previous judgment, be let alone by Eldred, and it is Eldred's duty to let them alone. The judgment in the previous case fails of the full effect which the law attaches to it if this is not so."

Now, keeping in mind, in the first place, the distinction between the rights of Kessler as against Eldred and those of Eldred as against Breitweiser, and, in the next place, the right of Kessler in that suit to have his right vindicated as against Eldred regardless of the latter's rights against Breitweiser, the relevance of the principle of the Kessler case to the case in hand becomes apparent. Kessler's right as against Eldred to make and sell the Kessler device had been established against Eldred's charge of infringement, not of invalidity, of the Eldred patent. The present appellee's right as against appellants to make and sell solid rubber tires, metal rims, and wire was adjudged to be unaffected by the Grant patent because it was invalid and void. The inevitable effect of the final adjudication, as between these parties, was, we think, to restore appellee to the same rights respecting the sale of its tires that it would have possessed had the Grant patent never been issued. To say anything less than this—to say that appellee may sell all the elements of the Grant patent as an entirety but may not sell them separately—is to deny to appellee in regard to a void patent a privilege equivalent to that accorded to a licensee under a valid patent to use less than the whole of the patented device (Young v. Foerster [C. C.] 37 Fed. 203, 204), or to a purchaser of a valid patented device to use as part of it an unpatentable article (Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 433, 14 Sup. Ct. 627, 38 L. Ed. 500). It follows that appellee's right as against appellants to make sales of any or all of the articles comprised in the Grant patent is at last referable to that principle which recognizes an absolute power in every man to dispose of his own property. The sanction then of any result of the former judgment which necessarily hampers and injures the successful party to the suit in the prosecution of its business would be at once illogical and unjust.

The effort made to escape this through the decisions of Aspden v. Nixon, 4 How. 467, 11 L. Ed. 1059, and Birdsell v. Shaliol, 112 U. S. 485, 5 Sup. Ct. 244, 28 L. Ed. 768, cannot be sustained. Those cases are not analogous. It is manifest that the elements of the Grant patent and the rights of the parties in respect of each of those elements,

as well as the combination, were involved in the issues of the original case in the sense that they were heard and adjudged on their merits; and consequently the subject-matter of the former suit and judgment must in accordance with familiar principles be held .to have included the subject-matter of this suit.

In respect to the license agreement, it is sufficient to say that it was entered into expressly without prejudice to the rights of any of the parties in August, 1903, for one year, and was neither renewed nor observed thereafter. If the agreement was not invalid on its face, which we do not decide, we are unable to see how anything done in pursuance of it could as claimed estop appellee from insisting upon the observance of the right adjudged in its favor in the former suit.

We are not satisfied, however, with the scope of the preliminary injunction. The suit commenced by appellants in St. Louis does not involve appellee's make of tires. The pleadings respecting the firm of Jose Alvarez & Co. of Cuba do not seem to change the situation touching the Cuban patent, as explained in Goodyear Tire & Rubber Co. v. Rubber Tire Wheel Co., supra. But, apart from these observations, we do not think that a proper showing was made to require a preliminary injunction as to acts alleged in respect to customers other than Doherty. We are of opinion, however, that the order should stand as to the prosecution of the suit against him. It is not contended, as plainly it could not be, that the remedy in equity cannot be invoked to prevent the prosecution of a single case like that against Doherty. Kessler v. Eldred, 206 U. S. 289, 27 Sup. Ct. 611, 51 L. Ed. 1065.

The order must be modified as thus indicated; and, subject to this, the order of the court below granting the preliminary injunction will be affirmed, with costs.