RODGER BALLAST CAR CO. v. OMAHA, K. C. & E. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit.    May 2, 1907.)

No. 2,492.

1. RAILROADS—FORECLOSURE OF RAILROAD MORTGAGE—PREFERRED CLAIM IN EQUITY.

A mortgagee of the property acquired and to be acquired and of the income of a quasi public corporation, such as a railroad company, takes a lien on the net income after the current expenses of operation in the ordinary course of business are paid, and impliedly agrees that the gross income shall be first applied to the payment of these expenses.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 581–585.]

2. RECEIVERS—PRIORITY OF RUNNING EXPENSES BEFORE RECEIVERSHIP.

A court of equity engaged in administering mortgaged railroad property under a receivership in a foreclosure suit may in its discretion prefer unpaid claims for current expenses incurred in the ordinary operation of the railroad within a limited time, usually six months, before the receivership, to the claims of bondholders secured by a prior mortgage, in the distribution of the income or of the proceeds of the corpus of the mortgaged property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 301–306.]

3. SAME—PREFERENTIAL CLAIM—TEST.

The test of the equity which entitles a claim to a preference over the mortgage in foreclosure is whether the consideration of the claim was or was not a part of the current expenses of the ordinary operation of the corporation within the time limited.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 301–306.]

4. SAME—NECESSITY—CONSERVATION—INCREASE OF SECURITY INSUFFICIENT.

Neither the fact that the consideration of the claim conserved the property and increased the security of the mortgagee, nor the fact that it was necessary to keep the mortgagor a going concern or to continue its business or operation, will raise a preferential equity in its favor, if its consideration was not a part of the current expenses of the ordinary operation of the mortgagor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 301–306.]

5. SAME—CLAIMS FOR PURCHASE PRICE OR RENTAL OF ROLLING STOCK NOT
   PREFERENTIAL.
      Claims for the purchase price or for the rental of engines. freight and
   passenger cars are not entitled to preference in payment out of the income
   or out of the corpus of the mortgaged property over those of creditors se-
   cured by prior mortgages.
      [Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 301–
   306.]

6. SAME—CLAIM FOR PURCHASE PRICE OF BALLAST CARS NOT PREFERENTIAL.
      A claim for $26,192.05, the purchase price of 32 ballast cars, bought by
   a mortgagor railroad company operating 168 miles of railroad within six
   months of the appointment of receivers, is not a current expense of the
   ordinary operation of such a railroad company, and is not entitled to
   preference in payment out of the income or the corpus of the mortgaged
   property in preference to those of bondholders secured by prior mort-
   gages.
      The broad language of the dictum in Fosdick v. Schall, 99 U. S. 235,
   252, 25 L. Ed. 339, that "necessary operating and managing expenses,
   proper equipment, and useful improvements" are to be deducted from the
   current income before the net income out of which the mortgage is to be
   paid arises, has been disapproved and modified, and the class of claims en-
   titled to equitable preference has been limited to those for the current ex-
   penses of ordinary operation within six months of the receivership, by
   the later decisions of the Supreme Court in Kneeland v. Trust Co., 136
   U. S. 89, 98, 10 Sup. Ct. 950, 34 L. Ed. 379, Morgan's L. & T. R. & S. S.
   Co. v. Texas Cent. Ry Co., 137 U. S. 171. 196, 198, 11 Sup. Ct. 61, 34 L. Ed.
   625, Thompson v. Railroad Co., 132 U. S. 68, 71, 73, 74, 10 Sup. Ct. 29, 33
   L. Ed. 256, Thomas v. Car Co., 149 U. S. 95, 110, 13 Sup. Ct. 824, 37 L.
   Ed. 663, Southern Ry. Co. v. Carnegie Steel Co., 176 U. S. 257, 296, 20 Sup.
   Ct. 347, 44 L. Ed. 458, Lackawanna Iron & Coal Co. v. Farmers' Loan &
   Trust Co., 176 U. S. 298, 315, 20 Sup. Ct. 363, 44 L. Ed. 475, and Gregg
   v. Metropolitan Trust Co., 197 U. S. 183, 25 Sup. Ct. 415. 49 L. Ed. 717.
   See Illinois Trust & Sav. Bank v. Doud, 44 C. C. A. 389, 105 Fed. 123, 52
   L. R. A. 481.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Western
District of Missouri.

A. S. Van Valkenburgh and J. E. McKeighan (Frank P. Blair, M.
F. Watts, and J. P. McBaine, on the brief), for appellant.

Frank Hagerman (Edward C. Wright, Hugh C. Ward, and J. G.
Trimble, on the brief), for appellees.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. The question which this appeal pre-
sents is whether or not the Rodger Ballast Car Company, a corpora-
tion, had a lien superior in equity to those of the bondholders secured
by two prior mortgages upon the property of the Omaha, Kansas City
& Eastern Railroad Company which were foreclosed in the court be-
low. The question was presented by an intervening petition and was
decided after the foreclosure sale. The record is voluminous, but in
our view of the facts, all of which have been carefully considered,
these alone are material to the determination of the case: The Eastern
Railroad Company had a railroad about 34 miles in length and a lease
of the railroad of the Quincy, Omaha & Kansas City Railroad Com-
pany, which was about 134 miles long, and it was operating both of
these railroads. In 1896 and 1897 it had given two mortgages upon

its railroad, upon its lease, upon its after-acquired property, and upon its income, to secure the payment of bonds to the amount of $1,428,-000. The operation of the Quincy Road was essential to the successful operation and business of the Eastern Company. In 1899 the railroads were in bad condition, more especially the Quincy Road. Miles of its roadbed had been but partially ballasted, the sides of this roadbed were washed, many of the cuts upon the road were badly filled, some of the ties were decayed and some of the bridges had become dangerous so that it was necessary to the safe operation of these railroads and to the continuance of the business of the Eastern Company that many miles of this roadbed should be reballasted and surfaced. The board of railway and warehouse commissioners of the state of Missouri in August, 1899, issued a peremptory order to the Eastern Company, under a possible penalty of the suspension of all traffic upon its roads, that this roadbed must be surfaced and the cuts ditched. Ballast cars were necessary to the performance of this work, and on September 11, 1899, the Eastern Company bought of the Rodger Company 32 ballast cars and one plow car for the sum of $26,192.05, which it never paid. On January 2, 1900, judgment creditors of the Eastern Company procured the appointment of receivers of the property of that company, including its lease of the Quincy Road, and these receivers took possession of the ballast cars, operated the railroads, expended $63,000 in ballasting or surfacing the Quincy Road, and paid out $101,483.52 for rentals, but they paid no part of the purchase price of these cars. On December 16, 1901, the trustees for the holders of the bonds secured by the mortgages first became parties to this proceeding, and they prayed for a foreclosure of the mortgages. A decree to that effect was rendered, and on March 18, 1902, the mortgaged property was sold thereunder. One of the conditions of the sale was that the purchaser should take the property subject to any indebtedness or liability of the Eastern Company which should finally be adjudged prior in lien or superior in equity to the liens of the two mortgages. The controversy here was between the intervening claimant and the purchaser of the property, and the court below held that the claim of the Rodger Company for the purchase price of the cars it sold to the Eastern Company was not prior in lien nor superior in equity to the liens of the bondholders secured by the prior mortgages, and it dismissed its petition. Fordyce v. Omaha, Kansas City & Eastern R. Co. (C. C.) 145 Fed. 544.

In Illinois Trust & Sav. Bank v. Doud, 44 C. C. A. 389, 414, 105 Fed. 123, 148, 52 L. R. A. 481, this court reviewed with some care the decisions of the Supreme Court prior to the year 1901 upon the right of the unsecured creditor of a quasi public corporation to a preference in the payment of his claim out of the income and out of the corpus of the mortgaged property over creditors secured by prior mortgages, and deduced from them these propositions:

"A mortgagee of the property, acquired and to be acquired, and of the income of a quasi public corporation, such as a railroad company, obtains a lien upon the net income of the company after the current expenses of operation incurred in the ordinary course of business are paid, and impliedly agrees that the gross income shall be first applied to the payment of these current expenses before the net income to which he is entitled arises.

"A court of equity engaged in administering mortgaged railroad property under a receivership in a foreclosure suit may prefer unpaid claims for current expenses of the ordinary operation of the railroad, incurred within a limited time before the receivership, to a prior mortgage lien, in the distribution of the income or of the proceeds of the mortgaged property.

"If such a mortgagor diverts the current income from the payment of current expenses to the payment of interest on the mortgage debt, or to the improvement of the mortgaged property, so that current expenses remain unpaid when a receiver is appointed, the court may, out of the income accruing during the receivership, restore to the unpaid claims for current expenses the amount so diverted. But, if there has been no diversion, there can be no restoration, and the amount of the restoration cannot exceed the amount of the diversion.

"The class of claims which may be awarded a preference in payment over the prior mortgage debt in equity is limited to claims for current expenses incurred in the ordinary course of the operation of the mortgaged property within a limited time before the appointment of a receiver. * * *

"If the consideration of a claim is not a part of the current expenses of the ordinary operation of the mortgaged property, but is a part of the expense of constructing a permanent addition or improvement to it, out of the ordinary course of its operation, neither the fact that it tended to conserve and improve the property and increase the security of the mortgagee, nor the fact that it was necessary to keep the mortgagor a going concern, nor the fact that the mortgagor pledged or mortgaged the current income to secure it, will give the claim a preferential equity over the lien of a prior mortgage."

An examination of the opinions of the Supreme Court upon this subject since the decision in the Doud Case was rendered discloses no modification of these propositions of law, save that the class of claims which may be preferred has been still farther restricted by the holding in Gregg v. Metropolitan Trust Co., 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717, that claims incurred within six months prior to the receivership for the purchase price of cross-ties essential to the replacement of ties decayed in the current operation of a railroad may not be preferred to the claims of bondholders secured by prior mortgages in payment out of the corpus of the mortgaged property in the absence of a diversion of income. It would be a useless task to again review and discuss the numerous opinions of the Supreme Court from which the controlling rules announced in the Doud Case were derived, and an application of them to the facts of this case must suffice.

For the purposes of this decision the concession is made that the purchase of the ballast cars was necessary to keep the Eastern Company a going concern and to continue its business and operation, and that their purchase conserved and improved the mortgaged property and increased the security of the bondholders secured by the mortgages. But neither the fact that the consideration of a claim preserved and improved the mortgaged property and increased the security of the mortgagees, nor the fact that it was indispensable to keep the mortgagor a going concern and to continue its operation and business, will give to the claim a preferential equity over the lien of creditors secured by a prior mortgage. Illinois Trust & Sav. Bank v. Doud, 44 C. C. A. 415, 105 Fed. 149, 52 L. R. A. 481; Atlantic Trust Co. v. Dana, 128 Fed. 209, 227, 62 C. C. A. 657, 675. There is another indispensable attribute of a preferential claim. It is that its consideration was a current expense of the operation of the mortgagor incurred in the ordinary course of its business within a limited time,

usually six months, anterior to the appointment of the receiver.    Illinois Trust & Sav Bank v. Doud, 44 C. C. A. 407, 408, 409, 414, 415, 105 Fed. 141, 142, 143, 148, 149 (52 L. R. A. 481).

In Southern Ry. Co. v. Carnegie Steel Co., 176 U. S. 257, 259, 296, at page 296, 20 Sup. Ct. 347, at page 362 (44 L. Ed. 458), the Supreme Court said:

"Before, however, such a creditor [an unsecured creditor] is accorded a preference over mortgage creditors in the distribution of net earnings in the hands of a receiver of a railroad company, it should reasonably appear from all the circumstances, including the amount involved and the terms of payment, that the debt was one fairly to be regarded as part of the operating expenses of the railroad incurred in the ordinary course of business, and to be met out of current receipts."

In Lackawanna, etc., Co. v. Farmers' Loan, etc., Co., 176 U. S. 298, 303, 315, 20 Sup. Ct. 363, 44 L. Ed. 475, in which a preference was denied to a claim for the purchase price of a large amount of rails which were indispensable to the continuance of the business of the company and of the operation of its railroad and which conserved the property and increased the security of the mortgagees, that court used these words:

"This court has uniformly held that in the distribution of the current earnings of an insolvent railroad company, whose property is being administered by a receiver, mortgage creditors could not be postponed to unsecured creditors, unless the debts due the latter were of the class known as current debts arising in the ordinary course of business and properly chargeable upon current receipts.    The decision in each case has been more or less controlled by its special facts.    But we are of opinion that such expenditures as those incurred in the making of the contracts with the Lackawanna Company were not such as are made in the ordinary course of the operations of a railroad, and cannot be deemed current debts within the rule that a railroad mortgagee when accepting his security impliedly agrees that the current debts of a railroad company contracted in the ordinary course of its business, in order to keep it a going concern, shall be paid out of current receipts before he has any claim upon such income."

A current expense incurred in the ordinary course of business within six months prior to a receivership is a usual expense incurred in the customary course of the business of the company.    The evidence in this case fails to convince that the purchase of these 33 cars for $26,192.05 by a railroad company operating 168 miles of railroad was the incurring of such an expense.    There was no evidence that the company had ever bought such a lot of cars before, or that in the ordinary course of its business it was accustomed to purchase such a lot once in three months or in six months or in any specific number of months, as a part of the current expenses of its operation.    On the other hand, the record demonstrates the facts that the expense of this purchase was not a current or a customary, but an unusual expense, that it was not incurred in the ordinary course of the business of the company, but on an extraordinary occasion to answer an unprecedented demand and to provide for an unparalleled situation.    For this reason, the debt of the railroad company to the appellant for these cars lacks an indispensable element of a preferential claim, and there was no error in the dismissal of the petition.

There is another established rule upon this subject which argues

by analogy for this conclusion. It is that claims for the purchase price or for the rental of engines and cars are not entitled to preference in payment out of the income or out of the corpus of mortgaged property over the claims of creditors secured by prior mortgages. Illinois Trust & Sav. Bank v. Doud, 44 C. C. A. 413, 105 Fed. 147, 52 L. R. A. 481; Fosdick v. Schall, 99 U. S. 235, 255, 25 L. Ed. 339; Huidekoper v Locomotive Works, 99 U. S. 258, 260, 25 L. Ed. 344; Kneeland v. Trust Co., 136 U. S. 89, 98, 10 Sup. Ct. 950, 34 L. Ed. 379; Thomas v. Car Co., 149 U. S. 95, 110, 111, 112, 13 Sup. Ct. 824, 831, 37 L. Ed. 663, in which the Supreme Court made these pertinent remarks:

"The case of a corporation for the manufacture and sale of cars, dealing with a railroad company whose road is subject to a mortgage securing outstanding bonds, is very different from that of workmen and employés, or of those who furnish from day to day supplies necessary for the maintenance of the railroad. Such a company must be regarded as contracting upon the responsibility of the railroad company, and not in reliance upon the interposition of a court of equity."

While ballast cars to move earth along a railroad for the purpose of surfacing and maintaining the roadbed are provided to make it possible for a railroad company to earn its income, while engines, freight cars, and passenger cars are usually obtained for the purpose of directly earning it, the latter are as necessary for the continuance of the business and of the operation of the company, and they contribute as much to increase the security of the mortgagees as the former, and the reasons urged by counsel for the Rodger Company why the same rules should not apply to both have failed to convince.

The decree below must be affirmed; and it is so ordered.