MISSOURI, K. & T. RY. CO. v. CITY TRUST CO. et al.

STANLEY et al. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. November 5, 1913.)

Nos. 3,812, 3,813.

RECEIVERS (§ 155*)—INSOLVENCY—OPERATION CLAIMS—PRIORITY OVER MORT-GAGES.

In foreclosure proceedings against a street railway company, a commercial railroad company filed a claim for repairs to a crossing of its tracks and those of the street railway company and for the latter's proportion of the wages of a flagman maintained at the crossing. Another claim was by a coal company for coal sold and delivered, both debts being incurred within a few months prior to the institution of proceedings to foreclose a mortgage on the street railway company's property, and according to their agreement or understanding both claims were payable during the month succeeding that in which they were incurred and out of current earnings. *Held*, that such claims were necessary maintenance and operation expenses; and it appearing that the operating income of the street railway company, during the term the debts were incurred, exceeded the operating expenses, the surplus being used to improve the property, claimants were entitled to priority of payment as against the mortgagees.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 283-292; Dec. Dig. § 155.*]

Appeal from the District Court of the United States for the Western District of Missouri; John C. Pollock, Judge.

Claims by the Missouri, Kansas & Texas Railway Company and by Robert A. Stanley and another, doing business as the Stanley Coal Company, against the City Trust Company, as receiver of the Sedalia Light & Traction Company, and others, to obtain an equitable preference over the lien of prior mortgage bondholders. From orders denying such relief, claimants appeal. Reversed and remanded.

Lee Montgomery, of Sedalia, Mo. (Sangree & Bohling, of Sedalia, Mo., Joseph M. Bryson, of St. Louis, Mo., and Montgomery & Montgomery, of Sedalia, Mo., on the brief), for appellants.

A. E. Spencer, of Joplin, Mo., and George F. Longan, of Sedalia, Mo., for appellees.

Before HOOK and SMITH, Circuit Judges, and VAN VALKENBURGH, District Judge.

HOOK, Circuit Judge. These cases involve the right of appellants, the Missouri, Kansas & Texas Railway Company and the Stanley Coal Company, as creditors of the Sedalia Light & Traction Company, to an equitable preference over the lien of prior mortgage bondholders. In a suit by the trustee to foreclose the mortgage upon the physical property and the franchises and income of .the traction company, the appellants intervened for a preference, but the trial court sustained demurrers to their petitions. The petitions disclose the following: The claim of the railway company is for repairs to a cross-

ing of its railroad tracks and the street railroad tracks of the traction company, and also the latter's proportion of the wages of flagmen maintained at the crossing. The items aggregate $280.54. The claim of the coal company for $1,166.86 is for coal sold and delivered. The debts were incurred within a few months before the trust company sued to foreclose the mortgage. The maintenance of the crossing and the services of the flagmen were necessary to the safe conduct of the business of both railroad companies and the performance of their public duties. Under the arrangement between them the items should have been paid by the traction company monthly. The coal sold by the coal company was for current use from day to day and was so used. It was essential to the operation of the property of the traction company and the performance of its franchise obligations, and by agreement and understanding the payments should have been made monthly out of the current income. During the time the debts were incurred, and also after the receivers took charge, the income of the business of the traction company exceeded the ordinary expenses of operation, and the excess for each period, which was more than enough to pay the interveners, was diverted by the company and the receivers, respectively, to the betterment and improvement of the mortgaged property resulting in an inequitable advantage to the bondholders; also, the receivers now have enough of the surplus income to pay the claims in question.

It is well settled that a railroad mortgagee impliedly agrees that the current debts incurred in the ordinary course of the mortgagor's business shall be paid from current income before his claim thereto attaches. It is immaterial that the creditor has not reduced his claim to judgment or that it arose and was not asserted before the mortgagee impounded the income in a suit to foreclose. The operation of the property in the ordinary course is essential to the very life of the franchises of the mortgagor, to the value of the property embraced in the mortgage, and to the performance of the obligations of the mortgagor to the public. That it be operated is to the advantage of the mortgagee and he is held to have so contemplated and to have consented to the necessary attendant current expense. So when labor, materials, and supplies are furnished, not on the personal credit of the mortgagor, but with the expectation or understanding that they will be paid for out of current income, the creditor has an equity superior to the lien of the mortgagee and the bondholders he represents which is not destroyed by the appointment of receivers. Where such claims are not paid and there has been a diversion of income to the betterment or improvement of the mortgaged property, and therefore to the benefit of the bondholders, or to the payment of interest to them, equity may require restoration when the mortgage is being foreclosed. These principles have been frequently expressed. See Rodger Ballast Car Co. v. Railroad, 83 C. C. A. 403, 154 Fed. 629, and cases cited. The interveners aver that an excess of income, sufficient to discharge their claims, both before and after the receivers took charge, was diverted to the benefit of the bondholders and also is now in the possession of the receivers. It is not necessary therefore to consider

whether, failing in proof of these averments, they can resort to the corpus of the mortgaged estate.

The decrees are reversed, and the causes remanded for further proceedings.