WESTERN UNION TELEGRAPH CO. v. UNITED STATES & MEXICAN TRUST CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 16, 1915.)

No. 4310.

*(Syllabus by the Court.)*

**1. CORPORATIONS ☞542—FRAUDULENT SALE—LIABILITY OF STOCKHOLDERS— RIGHTS OF GENERAL CREDITORS.**

A purchaser, through a foreclosure sale, or otherwise, of the property of an insolvent corporation by a new corporation, pursuant to a plan or scheme of the bondholders and stockholders of the insolvent corporation, whereby the stockholders thereof by receipt of stock or bonds of the new company, or otherwise, receive benefits equal to or greater than those received by, or openly offered to and rejected by, its general creditors, is fraudulent in law as to the latter, and renders the new company and the property it purchases at such sale liable for the claims of such creditors against the old company, at least to the extent of the value of the interest secured by the stockholders of the old company in excess of the value of the interest secured by, or openly offered to and rejected by, the unsecured creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2154–2160; Dec. Dig. ☞542.]

**2. APPEAL AND ERROR ☞256, 544, 870—EQUITY ☞422—EXCEPTIONS—MATTERS APPEALABLE—PRESENTATION FOR REVIEW.**

No bill of exceptions and no exception is essential to a review, on an appeal from a final decree or order, of an interlocutory order striking out a part of an intervening petition, or of a complaint in a suit in equity.

At the entry of the final order or decree in equity all the preceding interlocutory orders and decrees relative to the matters in controversy between the parties in interest therein are subject to revision by the court entering the final order or decree, and on an appeal therefrom they are reviewable by the appellate court and may be heard at the same time.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1489, 1579, 1580, 2412–2415, 2417–2420, 2422–2426, 2428, 2478, 2479, 3451, 3487– 3489, 3491–3512; Dec. Dig. ☞256, 544, 870; Equity, Cent. Dig. §§ 932– 944, 947–949; Dec. Dig. ☞422.]

**3. APPEAL AND ERROR ☞960—EQUITY ☞114—PARTIES ☞40—DECISIONS APPEALABLE—LEAVE TO INTERVENE.**

The grant of leave to intervene in a suit or proceeding in equity is generally discretionary.

But one who claims a lien upon or interest in specific property in the exclusive dominion and control of a court in such a suit or proceeding, so that such a lien or interest can be preserved, secured, or enforced only by an intervention in that court. has a right to intervene in the suit or proceeding therein, and an order denying leave so to do, or striking from the intervening petition a statement of a cause of action for the preservation, securing, or enforcing of such a lien or interest, is reviewable and reversible.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3825, 3832–3834; Dec. Dig. ☞960; Equity, Cent. Dig. §§ 275–279; Dec. Dig. ☞114: Parties, Cent. Dig. §§ 60–63, 65–67; Dec. Dig. ☞40.]

**4. APPEAL AND ERROR ⬅⬤⮕100—DECISIONS APPEALABLE—INJUNCTION.**

An order made after a hearing on a motion to dissolve a restraining order, and continuing it, is in effect an injunction, and is appealable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 670–680; Dec. Dig. ⬅⬤⮕100.]

**5. COURTS ⬅⬤⮕480—JURISDICTION—INTERFERENCE WITH PROPERTY—PROCEEDINGS IN OTHER COURTS.**

A court which has first lawfully acquired dominion over, and the power to dispose of, specific property, may lawfully retain exclusive jurisdiction to adjudicate claims for liens upon or trusts and interests in it, until its decree of disposition of it is carried into effect, and it may by injunction protect the property, its decree, and the title under that decree against suits or proceedings in other courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1270–1278; Dec. Dig. ⬅⬤⮕480.]

**6. INJUNCTION ⬅⬤⮕26—INTERFERENCE WITH PROPERTY—THREATENED ACTIONS IN OTHER COURTS—RIGHTS OF MORTGAGEE.**

The prosecution or threatened prosecution in other courts, by creditors of a mortgagor, of actions in personam against the purchaser at a foreclosure sale under a decree of the foreclosing .court, or against those claiming under such purchaser, upon alleged promises made, or legal liabilities incurred, by such parties to pay the debts of the mortgagor to such creditors, presents no ground for an injunction against such actions by the foreclosing court, because such actions involve no lien upon, or title or interest in, the specific property in the dominion of the foreclosing court, and do not interfere with the disposition thereof by its decree.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24–49, 54–61; Dec. Dig. ⬅⬤⮕26.]

**7. INJUNCTION ⬅⬤⮕148—RESTRAINING ORDER—BOND OR SECURITY—NECESSITY.**

The requirement of a bond or security to indemnify the parties restrained ,was not a condition precedent to the validity of a restraining order, or an order continuing it, under section 263 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162 [Comp. St. 1913, § 1240]).

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 323–334; Dec. Dig. ⬅⬤⮕148.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock and Arba S. Van Valkenburgh, Judges.

Suit by the United States & Mexican Trust Company and others against the Kansas City, Mexico & Orient Railway Company and others, wherein the Western Union Telegraph Company intervened. From an order striking out parts of its petition of intervention, intervener appeals. Remanded, with directions.

This is an appeal by the Western Union Telegraph Company from an order of June 27, 1914, striking out parts of its petition of intervention in the suit of the United States & Mexican Trust Company against the Kansas City, Mexico & Orient Railway Company, to foreclose the first mortgage upon the property of the latter company; from an order of June 27, 1914, allowing its claim for $1,280.72, but failing to grant it any other relief; from an order of July 14, 1914, restraining it and all the other creditors of the railway company, on the petition of the trust company, from commencing or prosecuting any actions at law, or suits in equity, or other legal proceedings, against the Kansas City, Mexico & Orient Railroad Company, the purchaser at the foreclosure sale, arising out of or based upon any claims or demands of any of said creditors against the railway company, or its former property, until the further order of the court; and from an order of July 15, 1914, made on the application of the telegraph company to dissolve the restraining order of the

preceding day, so modifying it that it should not prejudice the right, if any, of any creditor of the railway company who should enter his appearance in the foreclosure suit and prosecute his claim exclusively in the court below.

The main controversy in the case is whether or not the telegraph company is entitled, either at law or in equity, to a hearing and decision in any court regarding the validity of the claims which it pleaded in that portion of its intervening petition which was stricken out by the court below. Those claims were pleaded at length and in great detail. One of them was that the stock of the railway company had never been paid for, that the holders of the stock owed the railway company the par value of it, that the larger part of it was held by the holders of the bonds secured by the first mortgage, that the indebtedness of these bondholders for their stock should be ascertained and deducted from the amounts owing upon their bonds, and that the liability of the other stockholders should be enforced before the mortgaged property should be taken from the general creditors by a foreclosure of the first mortgage and a sale thereunder. Another was that the stockholders and bondholders planned and intended that the sale under the foreclosure decree about to be entered should be made to a new corporation organized by them, which should have a common stock of $50,000,000 and a debt of $12,000,000 secured by prior lien bonds, a debt of $31,000,000 secured by adjustment bonds upon the property to be purchased at the foreclosure sale, and that all of these bonds and all of this stock should be issued to the stockholders and bondholders of the old company for $12,000,000, to be paid by them for the property, without paying or distributing anything to the general creditors of the company. Another was that the construction companies, which were originally parties plaintiff in the foreclosure suit, and which claimed an indebtedness of the railway company to them of about $1,500,000, were in fact indebted to that company. The telegraph company alleged in its petition that the relations of the railway company, the construction companies, and the trust company were at all times exceedingly intimate, that the same individual was the president of each of them, that the directors of the companies were interlocking in their nature, and that at all times the affairs and business of these companies were under the direct control of the same man, and all these companies were managed as if they were in fact and effect one company.

The averments of the telegraph company as to all its claims, which have been briefly described, were stricken from its petition by the court below, leaving nothing in it but allegations that the railway company was indebted to the telegraph company for necessary telegraphic service rendered prior to September 1, 1911, in the sum of $1,297.20, and for telegraphic service rendered after September 1, 1911, and prior to March 7, 1912, when the foreclosure bill was filed, in the sum of $1,057.42, and that the earnings of the railway company both before and after the appointment of the receivers had been diverted from the payment of current debts to the payment of the bonded debt of the railway company and to the payment for betterments of the railroad. After this petition had been reduced to these terms, the trust company answered that the railway company owed the telegraph company $1,280.72, and no more, and denied diversion of any income and the preferential nature of the claim; and the court on June 27, 1914, in the absence of any evidence, adjudged that the telegraph company recover $1,280.72 of the railway company, that the judgment constitute a general demand against that company inferior and subordinate to the lien of the mortgage, and that the telegraph company have no other relief.

The decree of foreclosure was entered on February 2, 1914, on the day of the filing by leave of the court of the petition of the telegraph company. It adjudged $24,538,000 to be due on the bonds secured by the first mortgage, and the sale to pay it of the right, title, estate, interest, and equity of redemption of the railway company and of all parties to the suit, and of all persons claiming under them in and to the property of the railway company, and adjudged that the purchaser at the sale should hold the property free from all claims, liens, and charges of the railway company, except as in the decree expressly reserved. The reservations in the decree were that upon the acceptance of the bid for the property covered by the mortgage the purchaser should pay in cash to the special master, within ten days after the

entry of an order directing such payment, the costs of the cause, the amounts due the trust company, the receivers, and their counsel, some other amounts, and "the sums which may be allowed by the court in this cause, if any, to any other party to this cause, or its, his, or their solicitors"; that if the purchaser, his successor or assigns, should refuse on demand to pay any indebtedness or liability assumed by him or them under the terms of the decree, the party holding such claim, when established by a court of competent jurisdiction, might file a petition to have the claim enforced against the property sold at the foreclosure sale, the purchaser, or his successor or assigns, might appear and make defense, the court might order him or them to pay the claim, and if he or they failed to comply with the order within 30 days after the service thereof the court might retake and resell the property to pay such claim; that the purchaser or purchasers, his or their successors or assigns, should have the right, and were required at or before the delivery of the deed of the property so sold to him or them, to enter his or their appearance in the foreclosure suit in that court, and that he or they should have the right to contest any claim, demand, or allowance existing at the time of the sale, then undetermined, which would be payable by such purchaser or purchasers, or his or their successors, or which would be chargeable against such property purchased in addition to the amount paid by such purchaser or purchasers at such sale; that for the purpose of enforcing the claims above specified the court reserved jurisdiction of the parties and the property, and that "all questions, issues, matters, and things not hereby disposed of, * * * including the discharge of the receivers and settlement of their accounts, are hereby reserved by the court for its further adjudication, and that any party to this cause may at any time apply to the court for further relief at the foot of this decree, in respect of the matters not herein specifically provided for."

On February 2, 1914, when this decree was rendered, the telegraph company had, by leave of the court, filed its intervening petition, had become a party to the suit, and the claims set forth in those parts of its petition which were stricken out by the subsequent order of June 27, 1914, were pending and undetermined. They were, therefore, not disposed of or adjudicated by the decree of foreclosure, and the court reserved jurisdiction to hear and determine and enforce them against the purchaser, his successors or assigns, and against the property purchased, upon the application or petition of the holder of those claims set forth.

On July 6, 1914, the mortgaged property of the railway company was sold under the foreclosure decree through a committee of the holders of the bonds secured by the first mortgage to the Kansas City, Mexico & Orient Railroad Company for $6,001,000, and the sale was confirmed and the property conveyed and delivered to that company pursuant to a plan that that corporation, which had been organized for the purpose, should borrow $6,000,000 to pay for the property upon its promissory notes, payable in two years, with interest at 6 per cent. per annum, and it was about to issue its notes for $5,500,000, and to secure their payment by the pledge of $31,000,000 of its adjustment bonds, secured by a first mortgage upon the property it purchased, and by the further pledge of its entire authorized capital stock, amounting to $45,000,000.

Denied a hearing or trial by the court below of its claims to a lien upon and interest in the property foreclosed, which were set forth in its intervening petition, the telegraph company, in this state of the case, instituted a suit in the district court of Wyandotte county, Kan., against the purchaser, the railroad company, on behalf of itself and other creditors similarly situated, set forth the claims it had pleaded in the portions of its intervening petition which had been stricken out, the scheme or plan of the bondholders and stockholders of the railway company to have the new company, organized at their behest, purchase the property at the foreclosure sale for $6,001,000, and to issue $31,000,000 of first mortgage bonds secured upon it and $45,000,000 of capital stock of the railroad company, and to pledge them to obtain a loan of $6,000,000 to pay for this property, and prayed that the railroad company be restrained and enjoined from issuing these securities until the claims of the telegraph company and other creditors similarly situated to a lien upon and interest in the property in controversy could be heard and adjudicated, and

the district court of Wyandotte county granted an order temporarily restraining the railroad company from issuing any bonds or stock, and from incumbering the property it had purchased through the foreclosure sale until the claims of the telegraph company and other creditors similarly situated could be adjudicated, or until the further order of that court.

Other creditors followed the telegraph company and prayed like relief from the courts of Kansas upon like grounds. Thereupon the trust company filed a petition in the court below, in which it pleaded the proceedings to which reference has been made, including the scheme to borrow money to pay for the property in the way above stated, alleged that the purchase was not made in the interest of the stockholders, and that they had no interest in the property, that unless the railroad company could issue its notes, bonds, mortgage, and stock, and borrow money upon them, it could not pay for the property, and the court below would be compelled to retake and resell it, asserted that the court below had exclusive jurisdiction of the property sold to the railroad company, and prayed for an injunction against the interference with that property by the creditors of the railway company by means of suits in other courts, and upon this petition the court below by its order first restrained the telegraph company and all other creditors of the railway company from suing or prosecuting any suits at law or in equity against the railroad company, the Columbia-Knickerbocker Trust company, and Trustees, Executors & Securities Insurance Corporation, Limited, intending lenders, arising out of any claims against the railway company or to the property which it formerly owned and which was sold to the railroad company. This restraining order was made on July 14, 1914, and on a motion by the telegraph company to dissolve it the court, on July 15, 1914, ordered that the issue of the restraining order and injunction should not prejudice the right, if any, of any creditor of the Kansas City, Mexico & Orient Railway Company who should enter his appearance herein and avail himself of this order, and who should assert and prosecute his claim exclusively therein.

S. E. Harburger, of Kansas City, Mo. (New & Krauthoff, of Kansas City. Mo., Houston & Brooks, of Wichita, Kan., and McClintock & Quant, of Topeka, Kan., on the brief), for appellant.

Samuel Untermyer, of New York City, and Samuel W. Moore, of Kansas City, Mo. (Guggenheimer, Untermyer & Marshall, of New York City, on the brief), for appellees.

Before SANBORN, HOOK, and SMITH, Circuit Judges.

SANBORN, Circuit Judge (after stating the facts as above).   [1] The property of an insolvent railroad corporation in the custody of a court in a suit to foreclose a mortgage upon it is charged with a trust for the benefit, first, of the holders of preferential claims superior in equity to the lien of the mortgage; second, of the holders of the lien of the mortgage and of other such liens in their order of priority; third, of the unsecured or general creditors of the mortgagor; and, fourth, of its stockholders. Any plan or scheme threatened or executed whereby the holders of the bonds secured by the mortgage and the stockholders secure, or intend or undertake to secure, to the stockholders, by contract, foreclosure sale, or other device, an equal or a greater benefit from the property than is thereby secured to, or offered to and rejected by, the general creditors, is such a breach or threatened breach of trust as entitles any complaining creditor to relief in a court of equity. A purchase through a foreclosure sale, or otherwise, of the property of an insolvent corporation by a new corporation, pursuant to a plan or scheme of the bondholders and stockholders of the insolvent company, whereby the stockholders thereof derive, by receipt

of stock or bonds of the new company, or otherwise, benefits equal to or greater than those received by, or openly offered to and rejected by, its general creditors, is fraudulent in law as to the latter, and renders the new corporation and the property it purchased at such sale liable for the claims of such creditors against the old company, at least to the extent of the value of the interest secured by the stockholders of the old company in excess of the value of the interest secured by, or openly offered to and rejected by, the unsecured creditors.   Northern Pacific Ry. Co. v. Boyd, 177 Fed. 804, 101 C. C. A. 18; Northern Pacific Ry. Co. v. Boyd, 228 U. S. 482, 502, 504, 33 Sup. Ct. 554, 57 L. Ed. 931; Louisville Trust Co. v. Louisville, etc., Ry. Co., 174 U. S. 674, 683, 684, 19 Sup. Ct. 827, 43 L. Ed. 1130; Central Improvement Co. v. Cambria Steel Co., 210. Fed. 696, 701, 702, 127 C. C. A. 184, 189, 190.

[2] In the portions of the intervening petition of the telegraph company stricken out by the court below may be found allegations of facts amply sufficient to constitute a good cause of action for equitable relief from an impending breach of the trust under which the property of the railway company was held to the detriment of that company under these established principles of equity jurisprudence.  When this petition was filed, and when these portions of it were stricken from it, the court below had jurisdiction of the railway company, the trust company, the telegraph company, and exclusive jurisdiction of the property of the railway company.  Only through the court below could the telegraph company enforce its lien upon and its trust in that property, because no other court could take the property from its custody and jurisdiction for that purpose.  Hence, laying aside the other alleged grounds of equitable relief set forth in the portions of the petition excised, which may be more wisely and satisfactorily considered after, at a hearing, the relevant facts have been definitely ascertained, the averments of this cause of action invoked the undoubted power and duty of that court to hear and determine the issues tendered thereby on their merits, a power and duty which it might not lawfully renounce or avoid; for "the courts of the United States are bound to proceed to judgment, and to afford redress to suitors before them in every case to which their jurisdiction extends.  They cannot abdicate their authority or duty in any case in favor of another jurisdiction." Hyde v. Stone, 20 How. 170, 175 (15 L. Ed. 874); Barber Asphalt Paving Co. v. Morris, 132 Fed. 945, 950, 952, 66 C. C. A. 55, 59, 60, 67 L. R. A. 761.  The stricken portions of the intervening petition, therefore, should not have been removed therefrom; but the parties in interest in the foreclosure suit should have been permitted to answer them, and the issues so framed should have been heard and adjudged upon evidence of the facts.

Objections to the consideration of the question which has been discussed were made by the trust company on the following grounds: First, that no exception was taken to the order striking out portions of the intervening petition, and cases were cited to the effect that where rulings are made by a master or an examiner on motions before him, or upon the admission or rejection of testimony, those rulings must be presented to and ruled by the trial court, and exceptions must be

taken to the latter rulings in order to insure a review thereof by the appellate court, because the latter court reviews the rulings of the court below only, and not those of the master or examiner, which the lower court has not passed upon. Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co., 215 Fed. 362, 131 C. C. A. 504; Gorham Mfg. Co. v. Emery-Bird-Thayer Dry Goods Co., 104 Fed. 243, 244, 43 C. C. A. 511; White v. Wansey, 116 Fed. 345, 347, 53 C. C. A. 634; Kalamazoo Railway Supply Co. v. Duff Mfg. Co., 113 Fed. 264, 51 C. C. A. 221. But these decisions do not rule the question here under consideration, because this is a proceeding in equity, the appeal from the final order on the telegraph company's petition made on June 27, 1914, which allowed that company a general claim for $1,280.72 and denied it all other relief, brought to this court without bill of exceptions the entire record regarding the telegraph company's claim, that record disclosed the fact that the court below by an interlocutory order had stricken out the portions of the petition here in question, and no objection or exception was required to apprise this court that that ruling was not made at the request of or with the consent of the telegraph company, or to enable it to review such an order. Western Electric Co. v. Williams-Abbott Elec. Co., 108 Fed. 952, 957, 48 C. C. A. 159, 164; Elder v. McClaskey, 70 Fed. 529, 555, 556, 558, 17 C. C. A. 251, 278, 279, 280; Blythe Co. v. Hinckley, 111 Fed. 827, 837, 49 C. C. A. 647, 657.

When a final order or decree is made in a proceeding in equity all the preceding interlocutory orders and decrees relative to the matters in controversy between the parties to the final order remain under the control and subject to the revision of the court, and upon an appeal from the final order or decree every interlocutory order affecting the rights of the parties regarding the matters in question between them is subject to review in the appellate court and may be heard and decided at the same time. Perkins v. Fourniquet, 47 U. S. 206, 208, 12 L. Ed. 406; Forgay v. Conrad, 6 How. 201, 204, 205, 12 L. Ed. 404; Celluloid Mfg. Co. v. Cellonite Mfg. Co. (C. C.) 40 Fed. 476, 478; Pittsburgh, C. & St. Louis Ry. Co. v. Baltimore & Ohio R. R. Co., 61 Fed. 705, 708, 10 C. C. A. 20; N. K. Fairbanks Co. v. Windsor, 124 Fed. 200, 202, 61 C. C. A. 233.

The second ground of objection was that the court below never granted permission to the telegraph company to file an amended petition injecting into the excised petition the parts stricken from it. But no such ground was necessary to a review of the excising order.

[3] The third objection was that the court below had the same right after the petition was filed to strike out all averments of all grounds of relief, except the ground that the lien of the telegraph company's claim for compensation for its services to the railway company was superior in equity to the lien of the mortgage, that it had to prevent its filing a petition upon the grounds stricken. But it is not true as a general rule that a court has the same right to strike out an intervening petition, or a statement of a good cause of action therein, after the petition has been filed by leave of the court, that it has to deny leave to file it. It is generally discretionary with the court to permit or deny the filing of an intervening petition, and in such cases its order is not

appealable. But after permission has been granted the intervener is a party to the suit, is entitled to a determination of his claims, not by the discretion, but by the judgment, of the court, pursuant to the established principles and rules of equity jurisprudence, and the aggrieved party may correct by review any erroneous orders or rulings of the court.

Moreover, there is a class of cases in which a party has the equitable right to intervene, and the right to review by appeal any order denying that right, and this case is of that class. The class includes those cases in which one claims a lien upon or an interest in specific property in the exclusive jurisdiction and subject to the exclusive disposition of a court, and his interest therein can be established, preserved, or enforced in no other way than by the determination and action of that court. Credits Commutation Co. v. United States, 177 U. S. 311, 317, 20 Sup. Ct. 636, 44 L. Ed. 782; Credits Commutation Co. v. United States, 91 Fed. 570, 573, 34 C. C. A. 12; United States Trust Co. v. Chicago Terminal Transfer R. R. Co., 188 Fed. 292, 296, 110 C. C. A. 270; Minot v. Mastin, 95 Fed. 734, 739, 37 C. C. A. 234, 239; United States v. Philips, 107 Fed. 824, 46 C. C. A. 660. Such a party has an absolute right to intervene in the proceeding in which the court holds the exclusive custody and dominion of the property and to review by appeal an order refusing that right. By the same mark an order striking out the petition of such a party, or striking out the statement of his cause of action for a lien upon or interest in the property, and the facts entitling him to its preservation or enforcement, is reviewable and reversible. The telegraph company alleged facts in its petition showing itself to be one of the cestuis que trust for whom the property of the railway company, which was in the exclusive jurisdiction and subject to the exclusive disposition of the court below, was held by it, and that there was imminent danger that its interest in or lien upon it would be lost, unless established, preserved, and enforced by that court. On the statement in its petition it had the right to intervene, an order denying it leave to do so would have been reviewable and reversible, and the order striking from its petition its statement of its trust relation, its interest in or lien upon the property, and the grounds for the relief it sought, is equally so.

The record, however, has failed to convince that there was any error in the decision of the court that the claim of the telegraph company against the railway company for compensation for its telegraphic service was not superior in equity to the lien of the first mortgage, because the trust company answered the part of the petition of the telegraph company relating to this question that it was not indebted to the telegraph company for more than $1,280.72, that there never had been any diversion of current income or earnings of the railway company from the payment of operating expenses of the railroad, or from the payment of the intervener's claim for any purpose whatever, and there is no evidence or specific finding of the court upon the issues presented by this answer. In this condition of the record, even if the concession be made that the debt of $1,280.72 allowed was incurred for a part of the current expenses of the ordinary operation of the railway company, it does not appear whether or not this debt

was incurred within the time usually limited for the incurrence of preferential claims, six months before the filing of the bill to foreclose, and hence no error is disclosed by the record in the ruling of the court that the mere debt of the railway company to the telegraph company constituted no lien superior in equity to the lien of the mortgage. Illinois Trust & Savings Bank v. Doud, 105 Fed. 123, 124, 44 C. C. A. 389, 390, 52 L. R. A. 481; Rodger Ballast Car Co. v. Omaha, K. C. & E. R. Co., 154 Fed. 629, 630, 632, 83 C. C. A. 403, 404, 406; Kneeland v. American Loan & Trust Co., 136 U. S. 89, 98, 10 Sup. Ct. 950, 34 L. Ed. 379.

[4] We turn to the restraining orders of July 14, 1914, and July 15, 1914. The former restrained the telegraph company and all creditors of the railway company from bringing or prosecuting any actions at law, suits in equity, or legal proceedings against the railroad company, the purchaser, and the intending lenders, arising out of or based upon claims against the railway company; and the latter denied a motion of the telegraph company to dissolve the order, but so modified it that it should not prejudice the right of any creditor of the railway company who should assert his claim exclusively in the court below. As these orders have the same effect as if they had been embodied in one order, made after hearing both parties upon a motion to issue or to dissolve the restraining order, they will be treated together. The trust company contends they are mere restraining orders, and therefore are not appealable. But the acts of Congress provide that "when, upon a hearing in equity in a District Court, or by a judge thereof in vacation, an injunction shall be granted, denied, refused, or dissolved, by an interlocutory order or decree, or an application to dissolve an injunction shall be refused," an appeal may be taken from the order or decree. Conceding that a restraining order granted without a hearing is not ordinarily appealable, yet a restraining order which is granted, or sustained, or denied after a hearing of the parties, and which in effect and in everything but name, is a temporary injunction, falls within the evident meaning of the statute, and is reviewable by appeal, and the orders in question were of that character. The order refusing to dissolve and modifying the restraining order was made upon a hearing upon an application of the telegraph company to dissolve it, and in the later order the former was by the court itself called "a restraining order and injunction," so that the second order falls, not only within the true interpretation, but within the terms of the statute, and the appeal from it invokes a review of the order of the day before which conditioned its issue. Judicial Code, § 129 (Comp. St. 1913, § 1121); Griesa v. Mutual Life Ins. Co., 165 Fed. 48, 50, 91 C. C. A. 86, 88.

[5] The court which first lawfully acquires dominion over and the power to dispose of specific property may lawfully retain exclusive jurisdiction to adjudicate claims for liens upon or trusts and interests in it, until its decree of disposition of it is carried into effect, and it may by injunction protect the property, its decree, and the title under that decree from suits or other proceedings in other courts. Lang v. Choctaw, Oklahoma & Gulf R. R. Co., 160 Fed. 355, 360, 361, 87 C. C. A. 307, 312, 313; Chicot County v. Sherwood, 148 U. S. 529, 533,

534, 13 Sup. Ct. 695, 37 L. Ed. 546; Julian v. Central Trust Co., 193 U. S. 93, 112, 24 Sup. Ct. 399, 48 L. Ed. 629; Wabash R. R. Co. v. Adelbert College, 208 U. S. 38, 53, 28 Sup. Ct. 182, 52 L. Ed. 379; Barber Asphalt Pav. Co. v. Morris, 132 Fed. 945, 949, 66 C. C. A. 55, 59, 67, 67 L. R. A. 761; Brun v. Mann, 80 C. C. A. 513, 151 Fed. 145, 12 L. R. A. (N. S.) 154.

[6] At the time the injunction was issued the court below had acquired lawful jurisdiction of the property of the railway company, of the claims of creditors of that company to liens upon or interests therein based on the debts of that company to them, had adjudged its sale, and that sale had been made and confirmed. But the telegraph company had brought suit in the state court for itself and other creditors similarly situated, and had enjoined the railroad company, the purchaser, from incumbering the property it had purchased under the decree of the court below, so that the purchaser could not procure the money to pay for the property, and the disposition of the property directed by the decree was being thereby prevented. Other creditors of the railway company were pursuing or threatening to pursue the same course. The injunction was temporary until the further order of the court, and left the court free to modify or dissolve it at any time. The facts alleged in the petition of the trust company and the situation of the foreclosure suit in which it was filed were amply sufficient to sustain a temporary injunction against interference by the telegraph company, or the other creditors of the railway company, by means of suits in equity in other courts, with the property sold under the decree of the court below, or its incumbrance by the purchasers for an amount sufficient to pay the purchase price at the foreclosure sale until such time as that court could hear and determine the questions of law and fact presented by the excised portions of the intervening petition of the telegraph company and by the complaints in the state courts. It had the power to draw, and was warranted in drawing, to itself, and adjudging on their merits, these claims of the telegraph company and other creditors to a lien upon, or trust or interest in, the property it had adjudged sold, and it could not lawfully strike out and refuse to hear and decide these claims, and at the same time enjoin the telegraph company and the other creditors from securing a hearing and adjudication of them in any other court.

However, the averments in the petition and complaint of the telegraph company and the situation of the foreclosure suit did not justify an injunction against the commencement and prosecution by the telegraph company and the other creditors of the railway company of actions in personam against the railroad company, the Columbia-Knickerbocker Trust Company, and Trustees, Executors & Securities Insurance Corporation, Limited, on any alleged promise or legal liability to pay the debts of the railway company to them which those parties, or any of them, made, or have or may be alleged to have made or incurred, because such actions at law, their trial, and the judgments at law therein in the state courts require no interference with the exclusive dominion of the federal court over the property described in its decree, with that decree, the sale under it, the delivery of title to the

property, and the payment therefor by the purchaser. The prosecution or threatened prosecution in other courts by creditors of a mortgagor of actions in personam against the purchaser at a foreclosure sale under a decree of the foreclosing court, or against those claiming under him, upon alleged promises or legal liabilities made or incurred by such parties to pay the debts of the mortgagor to such creditors, presents no ground for an injunction against such actions by the foreclosing court, because such actions involve no lien upon, title, or interest in the specific property in the dominion of the foreclosing court, and do not interfere with the disposition thereof by its decree. Guardian Trust Co. v. Kansas City Southern Ry. Co., 146 Fed. 337, 340, 342, 76 C. C. A. 615, 618, 620; Guardian Trust Co. v. Kansas City Southern Ry. Co., 171 Fed. 43, 50, 96 C. C. A. 285, 292, 28 L. R. A. (N. S.) 620.

The telegraph company maintains that the orders granting the injunction should be reversed, because the trust company had no capacity to ask for the same and no interest in securing it. But that company was the trustee under the mortgage in foreclosure, the complainant in the suit to foreclose, the representative of the bondholders secured by the mortgage in that suit, the party who secured for these bondholders the decree of foreclosure and sale through which they were to obtain preferential payments of their bonds, payments which the parties enjoined were preventing by their suits and threatened suits in the state courts. The trust company was interested in the injunction to the extent of the interest of the bondholders it lawfully represented, it was a proper party to the petition for the injunction, and it had ample capacity to sue therefor.

[7] Objection is made that the restraining order was granted without requiring any bond of indemnity, or security, against loss to those enjoined from its issuance. But under section 263 of the Judicial Code (Comp. St. 1913, § 1240) requirement of a bond or security was not a condition precedent to the issue of a restraining order. All the orders were issued prior to Act No. 212, 63d Congress, Oct. 15, 1914 (Statutes of 2d Session, 63d Congress [Act Oct. 15, 1914, c. 321] 38 Stat. part 1, page 738) § 18. When the first restraining order was issued, it was discretionary with the court to issue it with or without security, and when, on motion to dissolve the injunction, it was continued, no application for security appears to have been made. The absence of such security is not fatal to the injunction. The court below has power to require it at any time, and to so condition its relief to the trust company, the railroad company, and those claiming under them, that the rights of all parties in the property sold may be held in statu quo or secured by indemnity until the final adjudication of the matters in controversy.

It is insisted that the orders for the injunction should be reversed, because there were no parties defendant to the petition, and especially because the railroad company, the purchaser at the sale, was not made a party. But the petition for the injunction was filed in the foreclosure suit by the plaintiff in that suit on July 14, 1914. The railway company was a party defendant in that suit. The telegraph company, by leave of the court, had filed its intervening petition set-

ting forth all the claims to a lien upon and an interest as a cestui que trust in the property in controversy in the foreclosure suit on February 2, 1914, had then become a party to that suit, and the purchaser at the foreclosure sale, and all parties claiming under that sale, have taken their titles and interest with notice of and subject to the ultimate adjudication of those claims, because, while the averments of some of them were stricken out on June 27, 1914, that order was reviewable by an appeal from the final order in that matter when the foreclosure sale was made, and all those claims of the telegraph company were then pending and undetermined, for the time for appeal had not passed.

The decree required the purchaser or purchasers, before the delivery of the deed of the property to him or them, to enter his or their appearance in the suit, and gave him or them the right to contest any claim then undetermined against him or them, or chargeable against the property purchased, and it is assumed that the real purchaser, the railroad company, complied with this provision of the decree, and was a party to the suit when the injunction was granted. If it was not, the court below has ample power hereafter to require it, and all parties holding under it, to become parties to the suit, and to the proceeding for the injunction, and to submit to the jurisdiction of the court below to hear and determine the issues presented by the claims of the telegraph company and those that shall be presented by the other creditors enjoined, and to enforce its requirement and adjudication by the exercise of its power over the injunction proceeding and the property sold. In this state of the case it was not fatal to the injunction proceeding that the telegraph company and the railroad company, who were parties to the foreclosure suit, and the unknown creditors classed with the telegraph company and enjoined, were not named in the petition for the injunction.

There are other questions discussed by counsel in their briefs, but it is unnecessary to discuss or consider them now. The litigation tendered by the petitions of the contestants is at its inception, and at this time the important matter is to direct the litigation so that the property under the dominion of the court below and the value of the claimed interests in it of each of the parties to the controversy concerning it be preserved until their rights therein can be determined by the court below.

To this end the order of June 27, 1914, striking out parts of the intervening petition of the telegraph company, and the order of June 27, 1914, allowing its claim for $1,280.72 as a general claim, and denying all other relief, are reversed, the court below is directed to permit the trust company, the railroad company, and all parties claiming under it to answer the petition of the telegraph company, and to proceed to hear and determine on their merits the issues thus raised.

On condition that the trust company, the railroad company, and those claiming under it, within 30 days after the issue of the mandate of this court herein, appear in the foreclosure suit below and submit to the jurisdiction of the District Court to hear and determine on their merits the claims of the telegraph company, and the other cred-

itors of the railway company enjoined, to liens upon and interests as cestuis que trust, or otherwise, in the property sold at the foreclosure suit, and that they give such security as the court below deems requisite to indemnify the telegraph company and the other creditors enjoined against loss and damage on account of the restraining orders and the injunction heretofore granted, and the restraining order and injunction continued, the District Court is directed to modify the restraining orders of July 14, 1914, and July 15, 1914, so that the creditors of the railway company shall not continue enjoined or restrained from bringing or prosecuting actions in personam at law and enforcing any judgments obtained therein against the railroad company, the Columbia-Knickerbocker Trust Company, or Trustees, Executors & Securities Insurance Corporation, Limited, upon alleged promises made, or legal liabilities incurred, by them, or either of them, to assume or pay the debts of the railway company to such creditors respectively, and so that such creditors, and each of them, shall continue to be enjoined from bringing or prosecuting any suit or suits other than the actions at law above specified, to establish or enforce their claims for liens upon or interests in the property sold at the foreclosure sale until the further order of the court below, or the final determination of their claims and the final vesting of the title of the property in controversy in the purchaser or other party adjudged by the court to be entitled to it. And in case the railroad company and those claiming under it above specified fail to comply with the condition above stated, the court below is directed to dissolve the restraining orders and injunction, to dismiss the petition of the trust company therefor, and to proceed to adjudicate the claims set forth by the telegraph company in its intervening petition.

This case is remanded to the court below, with directions to proceed in accordance with the views expressed and the directions made in this opinion.