### MOUNTAIN STATES POWER CO v. A. L. JORDAN LUMBER CO. et al.

(Circuit Court of Appeals, Ninth Circuit. October 29, 1923. Motion for Modification of Opinion and Decree Denied December 3, 1923.)

No. 4069.

1. Corporations ⬤⟶579(2)—Foreclosure sale to reorganize company held not to free property from claim of tort creditor.

Sale of the property of a corporation in foreclosure proceedings to a reorganized company composed of bondholders and stockholders of the old company, under a plan of reorganization that provided for payment of

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

general creditors of the old company, *held* not to cut off the right of a tort creditor whose claim was not paid to subject the property to its payment.

**2. Corporations ⊜⇒579(2)—Provision by reorganized corporation for payment of unsecured creditors of old company held inadequate to free the property from their claims.**

Where a reorganized corporation bought in the property of the old corporation with its stock and bonds, the setting aside as a fund for payment of general creditors of the old company of a certain number of shares of stock of the new company, which, at the price they were offered for sale, if sold, would realize but about two-thirds of the amount of such unsecured debts, *held* neither adequate nor equitable, and not to cut off the right of an unsecured creditor to subject the interest of the old stockholders in the property to the payment of his claim.

**3. Corporations ⊜⇒579(2)—Amount recoverable by unsecured creditor from property sold to reorganized company determined.**

Under such circumstances an unsecured creditor is entitled to recover from the reorganized company only his proportionate share of the sum which would have been available for general creditors, determined by deducting the amount of prior liens from the fair value of the property sold.

Appeal from the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Suit in equity by the Mountain States Power Company against the A. L. Jordan Lumber Company and another. Decree for defendants, and complainant appeals. Modified and affirmed.

For opinion below, see 286 Fed. 217.

On the 27th day of December, 1916, a receiver was appointed for the Northern Idaho & Montana Power Company at the suit of a general creditor on the ground of insolvency. At that time the indebtedness of the power company was made up of the following items: Outstanding bonds of the par value of $667,000, issued by a former owner of a part of the property; outstanding bonds issued by the power company, $4,761,000; and floating indebtedness estimated at from $700,000 to $800,000, $517,300 of which was later presented to the receiver and allowed. At or about the time of the appointment of the receiver a reorganization committee was formed and submitted a plan of reorganization, with the following objects in view:

"(1) The preservation of the property of the Northern Idaho & Montana Power Company, so as to recognize and safeguard the rights of security holders.

"(2) The reduction of the fixed charges to an amount safely within the net earning capacity of the reorganized property.

"(3) Adequate capital provision for present and future requirements."

In submitting the plan to the bondholders and stockholders, the committee said:

"The holders of a large amount of the bonds and stocks of the company have already expressed their approval of the plan. The interests of the security holders will be greatly benefited by the prompt reorganization of the company, and the undersigned recommend that all security holders participate in the reorganization and deposit their securities promptly. Consideration has been given to the holders of the floating debt and of the preferred and common stock. $2,426,550 par value of common stock will be given to the holders of the floating debt with the arrangement, however, that they shall offer this stock to the preferred and common stockholders at $15 per share. The undersigned regard this as a fair adjustment of the respective rights of these parties."

A general outline of the plan of reorganization, which contemplated the formation of a new company, was as follows:

"The holders of $2,872,000 par value of existing bonds of the Northern Idaho & Montana Power Company depositing their bonds hereunder, will re-

ceive in exchange 60 per cent. of their par value in new bonds, 16 per cent. in new preferred and 45 per cent. in new common stock, or, if all of said $2,-872,000 par value of bonds are deposited, $1,723,200 par value of new bonds, $459,520 par value new preferred, $1,005,200 par value of new common. This basis of exchange shall be known, and is hereinafter referred to, as first basis of exchange. The remaining $1,742,500 par value of existing bonds of the Northern Idaho & Montana Power Company are owned by the Standard Gas & Electric Company. H. M. Byllesby & Co. and William P. Bonbright & Co., Inc., and said companies are willing to exchange the same for 5 per cent. of their par value in new bonds, 66 per cent. in new preferred, and 90 per cent. in new common, or, for $87,125 par value of new bonds, $1,150,050 new preferred, and $1,568,250 new common stock. This basis of exchange shall be known, and is hereinafter referred to, as second basis of exchange. The holders of said $2,872,000 par value of existing balance may elect, at the time of depositing same, to exchange on the second basis of exchange up to the amount of securities available for the purpose; elections to be accepted in the order received until the amount of securities available is exhausted. Any elections made shall reduce the amount of bonds exchanged on the second basis by the Standard Gas & Electric Company, H. M. Byllesby & Co. and William P. Bonbright & Co., Inc., and such amount of bonds shall be exchanged on the first basis of exchange.

"The committe may, in its sole discretion, sell all new bonds, and instead of delivering the new bonds may pay to those entitled thereto cash at the rate of $880 and accrued interest for each $1,000 bond. $40 par value of new preferred stock will be issued in exchange for the February 1, 1917, coupon attached to the bonds deposited, aggregating, if all bonds are deposited, $184,-580 par value of new preferred stock. $2,426,550 par value of the new common stock shall be used to pay the floating debt of the company. This stock shall first be offered at $15 per share to the holders of the existing preferred and common stock of the Northern Idaho & Montana Power Company deposited hereunder in the proportion of 70 per cent. and 20 per cent., respectively, of the amounts deposited. $522,675 par value of the new bonds will be sold to provide cash for the purpose of paying the claims against the receiver, expenses of the reorganization, the expenditures made or liabilities incurred in the carrying out of this plan and the annexed agreement and any balance to be paid over to the new company to be used by it for additions to its property and working capital. These $522,675 par value of the new bonds have been underwritten by a syndicate composed of H. M. Byllesby & Co. and William P. Bonbright & Co., Inc., at 88 and accrued interest net to the company."

So far as the record discloses, this plan was carried out, except the common stock of the par value of $5,000,000 was changed to 50,000 shares without par value. The Power Company defaulted in the payment of interest due on its outstanding bonds on February 1, 1917, and on April 16, 1917, a foreclosure suit was instituted by the trustee under the trust deed. The foreclosure suit was later consolidated with the receivership suit, and thereafter a decree of foreclosure was entered; the property was sold by the special master and bid in by one Robert J. Graf, representing the reorganization committee. Graf assigned the certificate of sale to the new corporation, Mountain States Power Company, the plaintiff in the present suit. The sale was later confirmed, and a deed was executed by the master to the new corporation as assignee of the original purchaser. A few days prior to the appointment of the receiver, the defendant A. L. Jordan Lumber Company suffered a loss by fire which destroyed its manufacturing plant in the vicinity of Columbia Falls, Mont. Thereafter the Lumber Company presented a claim to the receiver in the sum of $34,000, claiming that the fire was caused through the negligence of the Power Company in the operation of its electrical power plant. The claim was rejected by the receiver, and thereafter the Lumber Company brought an action against the Power Company to recover damages for the loss thus sustained. The action was removed to the United States District Court for the District of Montana and judgment was there entered in favor of the Lumber Company for the sum of $34,500, together with costs of suit. An execution upon this judgment was levied upon the property of the present plaintiff, acquired through the receivership sale. The present suit was

thereupon instituted by the plaintiff to restrain the Lumber Company and the United States marshal from selling the property and to quiet title thereto. Upon the final hearing the court below entered a decree adjudging the amount of the judgment in favor of the Lumber Company a lien upon all property of the plaintiff acquired from the Northern Idaho & Montana Power Company through the receivership sale, subject only to the liens created by the two bond issues; that is, the old bond issue of $667,000 heretofore mentioned and a bond issue of the present plaintiff in the sum of $2,333,000, or so much of these bond issues as are now outstanding and unpaid, and directed the sale of the property to satisfy the lien. From that decree the present appeal is prosecuted.

Grosscup & Morrow and Benjamin S. Grosscup, all of Seattle, Wash. (R. M. Campbell, of Chicago, Ill., of counsel), for appellant.

T. H. MacDonald, J. E. Erickson, and C. H. Foot, all of Kalispell, Mont., and H. C. Smith, of Helena, Mont., for appellees.

Before HUNT and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge (after stating the facts as above). Under the facts in this case two questions arise: First, did the foreclosure and sale cut off the claims of the unsecured creditors against the property of the old company? and, second, if not, what remedy, if any, has the appellee Lumber Company against the new company?

[1] The questions thus presented were so fully considered by the Supreme Court, under similar facts, in Northern Pacific Ry. Co. v. Boyd, 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931, that we take the liberty of quoting from the opinion at length. In discussing the effect of the foreclosure and sale the court there said:

"Corporations, insolvent or financially embarrassed, often find it necessary to scale their debts and readjust stock issues with an agreement to conduct the same business with the same property under a reorganization. This may be done in pursuance of a private contract between bondholders and stockholders. And though the corporate property is thereby transferred to a new company, having the same shareholders, the transaction would be binding between the parties. But, of course, such a transfer by stockholders from themselves to themselves cannot defeat the claim of a nonassenting creditor. As against him the sale is void in equity, regardless of the motive with which it was made. For if such contract reorganization was consummated in good faith and in ignorance of the existence of the creditor, yet when he appeared and established his debt the subordinate interest of the old stockholders would still be subject to his claim in the hands of the reorganized company. * * * There is no difference in principle if the contract of reorganization, instead of being effectuated by private sale, is consummated by a master's deed under a consent decree."

And in answer to the argument that this is only true where there is fraud in the decree the court said:

"Such and similar possibilities at one time caused doubts to be expressed as to whether a court could permit a foreclosure sale which left any interest to the stockholders. But it is now settled that such reorganizations are not necessarily illegal, and, as proceedings to subject the property must usually be in a court where those who ask equity must do equity, such reorganizations may even have an effect more extensive than those made without judicial sale, and bind creditors who do not accept fair terms offered."

Again:

"As between the parties and the public generally, the sale was valid. As against creditors, it was a mere form. Though the Northern Pacific Railroad

was divested of the legal title, the old stockholders were still owners of the same railroad, incumbered by the same debts. The circumlocution did not better their title against Boyd as a nonassenting creditor. They had changed the name, but not the relation. The property in the hands of the former owners, under a new charter, was as much subject to any existing liability as that of a defendant who buys his own property at a tax sale. The invalidity of the sale flowed from the character of the reorganization agreement regardless of the value of the property, for in cases like this the question must be decided according to a fixed principle, not leaving the rights of the creditors to depend upon the balancing of evidence as to whether on the day of sale the property was insufficient to pay prior incumbrances. * * * This conclusion does not, as claimed, require the impossible, and make it necessary to pay an unsecured creditor in cash as a condition of stockholders retaining an interest in the reorganized company. His interest can be preserved by the issuance, on equitable terms, of income bonds or preferred stock. If he declines a fair offer, he is left to protect himself as any other creditor of a judgment debtor, and, having refused to come into a just reorganization, could not thereafter be heard in a court of equity to attack it. If, however, no such tender was made and kept good, he retains the right to subject the interest of the old stockholders in the property to the payment of his debt. If their interest is valueless, he gets nothing. If it be valuable, he merely subjects that which the law had originally and continuously made liable for the payment of corporate liabilities."

See, also, Kansas City Southern Ry. Co. v. Guardian Trust Co., 240 U. S. 170, 36 Sup. Ct. 334, 60 L. Ed. 579; Central Improvement Co. v. Cambria Steel Co., 210 Fed. 701, 127 C. C. A. 184; Western Union Tel. Co. v. United States & Mexican Trust Co., 221 Fed. 545, 137 C. C. A. 113.

The reorganization agreement and foreclosure sale under consideration in that case were fully as favorable to the contention of the new company as are the plan of reorganization and foreclosure sale here involved. In that case the reorganization agreement made no provision for the payment of the unsecured creditors of the old company, but the new company voluntarily purchased claims against the old, aggregating $14,000,000. Here all parties in interest, stockholders, bondholders, and unsecured creditors, were parties to the reorganization agreement, and express provision was made for general creditors. There was no attempt or intent to bar them, doubtless for the reason that they could not be barred under the plan of reorganization adopted, without incurring the hazard and uncertainty of litigation. It is plain, therefore, that the claim of the appellee Lumber Company was not barred or cut off by the foreclosure suit.

[2] The next question is: Was adequate and equitable provision made to preserve the interest of the Lumber Company under the reorganization? There was here no offer or tender of income bonds or preferred stock, as suggested in the Northern Pacific Case. Of course, the method there suggested is not exclusive, but in our opinion it is exclusive of such a provision as was here made; 23,400 shares of the common stock in the new company, without par value, were set aside or reserved to satisfy the claims of unsecured creditors, aggregating approximately $550,000. The stock thus reserved or set aside was to be first offered for sale to the stockholders of the old company at $15 per share. Had the whole block been sold or taken up at that price, approximately $350,000 would have been realized therefrom; but at the time of the hearing in the court below, five years after the reor-

ganization, only 1,532 shares of this stock had been sold or taken up, and we have no hesitation in saying that such a provision was neither adequate nor equitable, and we need not stop to inquire whether a timely tender was made and kept good.

[3] The remaining question is: To what measure of relief, if any, is the appellee Lumber Company entitled? The court below found that at the time of reorganization the property of the old company was of the value of not less than $6,200,000, and that the total indebtedness of the old company, secured and unsecured, did not exceed that sum. The finding as to the value is assailed by the appellant. The testimony on that question was meager and unsatisfactory. There was testimony tending to show that the old company had made a report to the Public Service Commission of the state of Montana in 1916, fixing the value of the property at a sum greatly in excess of that found by the court, but it was explained that this value was based upon the bonded debt and par value of the stock, and not upon the actual value of the property. There was testimony tending to show that experts employed by the reorganization committee made a report fixing the value of the property at $6,000,000, and there was other testimony tending to show that the value did not exceed $4,600,000. This, together with the bonds and stocks of the old company and the new, is substantially all the testimony found in the record. We do not feel that we would be justified in disregarding the value of $6,200,000 as found by the court below, as it would seem that the testimony in support of that finding is fully as strong and convincing as was the testimony in the case to which we have referred. However, there is at least apparent conflict in the findings as made. Thus in the course of its opinion the court below said:

"In 1916 and for some time the old company had failed to earn fixed charges, was at the end of its resources as a going concern and insolvent."

And again:

"This evidence does not suffice to prove that at reorganization the properties were not of sufficient value to reasonably work out full payment of all the creditors of the old company. On the contrary, taking into consideration all facts and circumstances in proof, and weighed in the light of those plaintiff might have adduced and did not; that with comparative ease it might have fully informed the court and wherein defendant virtually could not, the finding is justified, required, and made that at reorganization the properties of the old company were of sufficient value to pay in full all the old company's creditors, secured and unsecured and including defendant; that is to say, were of value not less than $6,200,000, and the total of all debts, secured and unsecured, did not exceed said sum."

If the term "insolvent" was used by the court in the bankruptcy sense—that is, that the aggregate of all the property at a fair valuation was not sufficient in amount to pay the debts—there is conflict between the two; but if the term was used simply in the sense that the company was at the end of its resources as a going concern, and unable to pay its debts as they matured in the ordinary course of business, the findings may be reconciled. But the court was in error in finding that $6,200,000 would suffice to pay all debts of the old company, secured and unsecured. The amount of the decree of foreclosure at the date

of sale was admittedly $5,167,272, the amount of the prior bond issue unaffected by the foreclosure was admittedly $667,000, the aggregate of the claims allowed and approved by the receiver was admittedly $517,300, and the claim of the Lumber Company was admittedly $35,-077, making a total indebtedness of $6,384,345. Whether the court would have found that the value of the property exceeded $6,200,000, if it had made a correct estimate of the indebtedness, we are not advised; but we feel constrained to accept the specific finding as to value in view of the fact that the court, in our opinion, placed that value at the outside limit justified by the testimony.

It appears from the testimony, without contradiction, that for a long time prior to the appointment of the receiver the old company was unable to pay interest on its bonds and operating expenses, that bondholders and stockholders loaned large sums to the company to enable it to meet these fixed charges, that for a considerable portion of the sums thus loaned no claim has been made against either the receiver or the new company, and that for the balance of the sums advanced, aggregating more than $500,000, creditors who were amply able to protect their rights, accepted the provision made for them in the reorganization agreement, a provision which will net them much less than the face value of their claims, and a provision which the Lumber Company has refused to accept. The court below said, incidentally, that to hold otherwise than it did would involve the unpleasant implication that bonds and stocks are afloat not paid in full.

But, if we turn to the plan of reorganization as carried out, we find that it provides for a new bond issue of $3,000,000 to take up all outstanding bonds of the old company and to provide a construction fund and working capital of $500,000; that it provides for new preferred stock of the par value of $1,794,150, and, as modified, for 50,000 shares of common stock without par value. If we assume that the bonds and preferred stock are worth par, and the common stock worth $15 par value, and this assumption is more favorable to the appellee Lumber Company than the facts will warrant, the bond issue, the preferred stock, and the common stock combined do not exceed in value $5,500,000. For these reasons, and from a careful examination of the testimony, we are convinced, as already stated, that the court below fixed the value of the property of the old company at the outside limit, and that no increase in that value would be justified. As said by the court in the Boyd Case:

"If, however, no such tender was made and kept good, he retains the right to subject the interest of the old stockholders in the property to the payment of his debt. If their interest is valueless, he gets nothing. If it be valuable, he merely subjects that which the law had originally and continuously made liable for the payment of the corporate liabilities."

The Lumber Company then has the right, and the right only, to subject the interest of the old stockholders in the property to the payment of its claim, and after making just and equitable provision for other unsecured creditors, and of the provision made the Lumber Company cannot complain, we are satisfied that the remaining interest of the old stockholders in the property was substantially less than the fair value of the claim of the appellee Lumber Company. After deducting

the amount of the foreclosure decree and outstanding bonds from the value fixed by the court, there is a balance of $365,725 to satisfy the claims of unsecured creditors, and this balance should be prorated among the several creditors. This will allow to each creditor approximately 66 per cent. of the face value of his claim, and we deem such an allowance fair and even liberal under the testimony; for, had the property been sold outright to bondholders or third parties leaving the stockholders and unsecured creditors to shift for themselves, we are satisfied that they would not fare nearly so well.

The decree of the court below will therefore be modified, by reducing the claim of the Lumber Company to 66 per cent. of the original judgment, with interest at the rate of 8 per cent. per annum from the date of its judgment. The clerk will make the necessary computation before entering judgment here, and, as thus modified, the decree of the court below is affirmed, with costs to the appellant.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes